[L. A. No. 2221. In Bank.—August 19, 1908.]

## In the Matter of the Estate of HELEN PEABODY, Deceased.

TRUST TO CONVEY REAL ESTATE IS VOID.—A disposition of real property to trustees, in trust to convey to another, where there are no words which can be construed to accomplish a direct disposition from the donor or testator to the other person, is void under the provisions of the Civil Code prohibiting such trusts to convey.

WILLS—PRINCIPLES OF CONSTRUCTION—TECHNICAL WORDS.—In the interpretation of wills, the important thing is to ascertain the intention of the testator. This is to be ascertained from the words of the will, taking into view the circumstances under which it was made. All parts of the will are to be considered in relation to each other so as to form, if possible, a consistent whole. Words are to be taken in their ordinary grammatical sense, unless a clear intent to use them otherwise is apparent and that sense can be ascertained. Technical words are not to be taken in their technical sense, if it satisfactorily appears that the will was drawn solely by the testator and that he was unacquainted with such technical sense.

ID.—MEANING OF WORD "TRANSFER."—The word "transfer," while frequently used in the Civil Code of this state to indicate a passing of title to property from one living person to another, is not a word of general use in conveyancing to signify a conveyance of

title to property, and outside of this state it cannot be said to have such a well-defined technical legal meaning, especially when used as a verb.

ID.—DEVISE TO EXECUTORS TO TRANSFER TO TRUSTEES—TRUST NOT CREATED IN EXECUTORS.—A clause in the holographic will of a testatrix, who had spent most of her life outside of the state of California, and who could not be presumed to be aware of the local legal technical meaning of the word "transfer," devising real estate to her executors "to be transferred" by them to a specified board of missions, as trustees and managers thereof for a designated charitable use, should not be construed as an attempt to create a trust in the executors to convey the land, but should be construed as meaning nothing more than that the executors, in their representative capacity, should take possession and control of the property for purposes of administration and should transfer it upon final distribution to the trustees in whom she desired that the title should vest, to be applied to the charitable use described.

ID.—DEVISE OF ENTIRE ESTATE TO CHARITABLE USE—INADEQUACY OF PROPERTY FOR PURPOSES OF TRUST—CY PRES POWER OF EQUITY.— Where a testatrix attempts to devise her whole estate for a particular charitable use, such devise, under section 1313 of the Civil Code is void as to two thirds of the property of the deceased, and valid as to the remaining one third. If such remainder is inadequate to carry out the exact charitable purpose contemplated, a court of equity, under its *cy pres* power, would be authorized to give effect to the general charitable intent of the testatrix.

APPEAL from a decree of the Superior Court of Los Angeles County distributing the estate of a deceased person, and from an order refusing a new trial. James C. Rivers, Judge.

The facts are stated in the opinion of the court.

Edwin Baxter, for Appellants.

Hahn & Hahn, for Respondents.

SHAW, J.—The record presents appeals from the final order of distribution of the estate of Helen Peabody, deceased, and also from the order denying a new trial. The sole question presented is the validity of the disposition of the property of the estate by the will of the deceased.

The will purports to give the entire estate in trust for charitable uses. Section 1313 of the Civil Code provides that no such devises or bequests shall collectively exceed one third

of the estate of a decedent leaving legal heirs, and that all dispositions of property to the contrary shall be void. The appellant concedes that under this clause the disposition to charitable uses is void as to two thirds of the property belonging to the deceased, but contends that it is valid as to the remaining one third. The will was made on May 23, 1904, more than a year prior to the death of the testatrix, and, hence, the second clause of section 1313, forbidding all testamentary dispositions to charity, unless the will is executed at least thirty days before the decease of the testator, does not apply.

The serious question presented concerns the validity of the disposition under the rule settled by the decision in *Estate of Fair*, 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000], and the subsequent cases following it, to the effect that a disposition of real property to trustees, in trust to convey to another, where there are no words which can be construed to accomplish a direct disposition from the donor or testator to the other person, is void by reason of the provisions of the Civil Code prohibiting such trusts to convey. (*Estate of Sanford*, 136 Cal. 98, [68 Pac. 494]; *Sacramento Bank* v. *Montgomery*, 146 Cal. 745, [81 Pac. 138]; *Estate of Dixon*, 143 Cal. 513, [77 Pac. 412]; *Hofsas* v. *Cummings*, 141 Cal. 527, [75 Pac. 110]; *McCurdy* v. *Otto*, 140 Cal. 51, [73 Pac. 748].)

Certain rules of interpretation applying particularly to wills and established by the authorities and by the Civil Code have an important bearing on the construction of this will. The important thing is the intention of the testator (sec. 1317). This is to be ascertained from the words of the will, taking into view the circumstances under which it was made (sec. 1318). All parts of the will are to be considered in relation to each other so as to form, if possible, a consistent whole (sec. 1321). Words are to be taken in their ordinary grammatical sense, unless a clear intent to use them otherwise is apparent and that sense can be ascertained (sec. 1324). Technical words are not to be taken in their technical sense if it satisfactorily appears that the will was drawn solely by the testator and that he was unacquainted with such technical sense (sec. 1327). "A technical construction of words and phrases, although *prima facie* the one which should prevail,

will not go to the extent of defeating any obvious general intention of the testator, since wills are often prepared by those wholly unacquainted with the precise technical force of legal formulas." (1 Redpath on Wills, p. 435, sec. 22. See, also, *Estate of Bennett*, 134 Cal. 322, [66 Pac. 370]; *Richardson* v. *Noyes*, 2 Mass. 60, [3 Am. Dec. 24]; *Homer* v. *Shelton*, 43 Mass. 198; *Brimmer* v. *Sohier*, 55 Mass. 129; *Carr* v. *Green*, 2 McCord (S. C.) 84; *DeKay* v. *Irving*, 5 Denio, 646.)

The parts of the will bearing upon this question are as follows:—

"*First*. I wish to testify that my entire, though small estate is the fruitage of a little investment made in 1855, the date of my entering upon my work of thirty-three years of blessed, *benevolent* labor in the Western Female Seminary, Oxford, Ohio, a work which I laid down in June, 1888.

"*Secondly*. I do now give, devise and bequeath all my real estate (describing here both real and personal property, including one house and lot in St. Louis, Mo.) to my executors to be transferred by them to the Woman's Occidental Board of Missions, whose headquarters are now located at 920 Sacramento St., San Francisco, Cal., with the Executive Committee of the Woman's Presbyterian Missionary Society of the Los Angeles Presbytery as trustees and managers thereof.

"*Thirdly*. This property to be used as a temporary resting place, *not for invalids*, who can be cared for better elsewhere, but for weary Christian workers in limited circumstances from either the Home or Foreign field.

"*Fifthly*. This Home shall be called *The House of Rest*. (Here follow other provisions declaring who may be admitted as inmates of The House of Rest and the charges to be made.)

"*Ninthly*. All the residue of my property, now in bonds, a list of which will be enclosed with this document, together with real estate which may be sold at any time it is my wish to have invested (after paying all debts) as a permanent fund, allowing the income *only* to be used in aiding to meet the expenses of 'The House of Rest.'"

If the provisions above quoted disclosed an intention to create an estate in the executors to be by them conveyed to the trustee, the case would come within the rule of the Fair case, but we do not think the testatrix intended such a consequence. The will construed in the Fair case was drawn

with great care, in language of definite technical significance, by some person skilled in law and in the use of legal technical terms, and the intention to vest the title to the real property in trustees, to be afterwards conveyed by them to the remaindermen, was so clearly and accurately expressed that no other interpretation was possible. The court in that case say (132 Cal. 530, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000]): "It is perfectly clear, beyond even a reasonable doubt, that the testator did *not* intend to devise estates in remainder to persons of the named classes, but intended to devise the whole fee to his trustees, upon trusts to convey, after the expiration of a probably very long period of time, to those persons, so that the latter would receive new estates created by the conveyances."

The testatrix in the case at bar wrote the entire will with her own hand. It appears therefrom that the active period of her long life had been spent in teaching in the state of Ohio, and that, although she was cultivated and refined, she was not accustomed to the use of legal terms nor familiar with their technical significance. The words which it is claimed create a trust to convey are these: "I do now give, devise and bequeath all my real estate (describing both real and personal property) to my executors to be transferred by them to the Woman's Occidental Board of Missions." In drawing our Civil Code the codifiers made free use of the word "transfer" to indicate a passing of title to property from one living person to another (Civ. Code, sec. 1039). It is used in this sense in many sections of the Civil Code, but it is not a word of general use in conveyancing to signify a conveyance of title to property, and outside of this state it cannot be said to have a well-defined technical legal meaning, especially when used as a verb. In ordinary language it has a very general meaning, applying either to the removal of a thing or rights from one place or person to another, the changing of the control or possession of things, or to the conveyance of title (see Webster's Dictionary). As the life of the testatrix was chiefly spent in teaching in the state of Ohio, it is not reasonable to suppose that she was aware of the legal technical meaning of the word "transfer" in California arising from its use in our Civil Code. Her general intention that the Woman's Occidental Board of Missions should have all her property,

and that this property was to be used to establish and maintain "The House of Rest" which she contemplated, is plainly apparent from the entire will. We think, taking the will as a whole, and considering the life and character of the deceased and the circumstances surrounding its execution, that the testatrix meant nothing more by this clause than that the executors, in their representative capacity, should take possession and control of the property for administration under the laws of this state and in due course of administration should transfer it upon final distribution to the trustees in whom she desired that the title should vest, to be applied to the charitable use she describes. In writing the phrase "to be transferred by them" she was, as she supposed, merely describing the legal process of administration by which the property was to be transmitted to the trustee. Thus understood, the will is harmonious, no trust to convey is created and her intended disposition is valid, except as to the two thirds which the law withholds from charitable uses.

It is urged that the amount of the estate applicable thereto is so small that it would be inadequate for the purpose contemplated, and that the disposition is void for that reason. We do not know the value of the house and lot in St. Louis, nor whether, under the law of Missouri, the whole devise is effectual as to that property. The mere fact that one third, only, of the California property can be devoted to the establishment of "The House of Rest," and that hence the establishment may be much smaller than the testatrix intended, does not make the devise invalid. The will does not declare that any particular parcel of the land devised shall constitute "The House of Rest," nor where it shall be situated. In aid of the general design it may properly be construed to authorize one third of the proceeds of all the parcels to be used in procuring a house for that purpose. An inexpensive cottage of a few rooms would answer the purpose to the extent of its capacity. It is not claimed that the amount available will not suffice to accomplish that result. "Courts look with favor upon all attempted charitable donations, and will endeavor to carry them into effect, if it can be done consistently with the rules of law." (*Estate of Willey*, 128 Cal. 12, [60 Pac. 471]; *Estate of Merchant*, 143 Cal. 540, [77 Pac. 475]; *Fay* v. *Howe*, 136 Cal. 602, [69 Pac. 423].) As this court said in

*Estate of Hinckley*, 58 Cal. 512: "We entertain no doubt that in the general devolution upon the courts of this state of all judicial power, with respect to charities, is included the power *cy pres*, so far as the same may be employed in directing trustees named in a will or deed to carry into effect the general lawful and charitable intent, when the particular scheme is impracticable." Under this power the court would be authorized to direct the trustees to sell the undivided one third interests and use the proceeds in the manner above indicated to carry out the intent of the testatrix, although not precisely in the manner she may have contemplated.

The judgment and order are reversed.

Angellotti, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.