[S. F. No. 10177. In Bank.—September 21, 1922.]

In the Matter of the Estate of WILLIAM T. COLEMAN, Deceased. UNION TRUST COMPANY OF SAN FRANCISCO (a Corporation), Trustee, etc., Petitioner and Respondent, WILLIAM T. COLEMAN, Jr., et al., Respondents, ROBERT L. COLEMAN et al., Appellants.

[1] ESTATES OF DECEASED PERSONS—TESTAMENTARY TRUST—WITHDRAWALS FROM CORPUS — RIGHTS OF PARTIES — CONSTRUCTION.— Where a testator, who left his entire estate in trust for the term of the lives of his widow and two sons and the survivor of them, provided that after the death of the widow the sons should each receive one-half of the eighty per cent of the income of the estate which was given to her for life and that upon the termination of the trust the entire estate should be equally divided between the heirs of the sons "per stirpes and not per capita," a modifying pro· vision of the will which gave each of the sons the power after a stated time to make certain withdrawals of the *corpus* of the estate and providing that if only one of the sons exercised such power the trustee should reinvest for the other son an amount equal to such withdrawal "for the separate account of his individual self, or his heirs and representatives" was not a provision solely for the personal benefit and protection of the sons, and where the power was exercised by one son, after the death of the other leaving heirs, such heirs were entitled to the amount of such withdrawal.

APPEALS from orders of the Superior Court of the City and County of San Francisco distributing trust funds. Thomas F. Graham, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

M. F. Michael and Lloyd Baldwin for Appellants.

Allen G. Wright for Respondent William T. Coleman, Jr.

MYERS, J., *pro tem.*—Three separate appeals are here involved, each being from a separate order of the trial court in probate. Two of the orders appealed from are brief, informal minute entries, the substance of which is embodied in the third, a formal order of court signed by the judge and entered at length in the minutes. It is

apparent that the determination of the appeal from the complete formal order will be determinative of the three appeals, and the parties have so stipulated. The single question here involved concerns the correct construction to be placed upon certain terms of the will as defining the respective rights of the parties in a contingency which has arisen, and the duties of the trustee with relation thereto.

The testator, William T. Coleman, died November 22, 1893, leaving a last will dated August 28, 1893, which was thereafter admitted to probate, the estate duly administered, and, on April 30, 1895, distributed to the Union Trust Company as trustee, by decree of final distribution, pursuant to the provisions of the will. The testator left him surviving his widow, a son, Robert L. Coleman, then unmarried, a son, Carlton C. Coleman, who had been married and was then divorced, and the latter's son, Willam T. Coleman, Jr., then about nine years of age. The son, Carlton C. Coleman, died in October, 1895, leaving his son, William T. Coleman, Jr., (respondent herein), surviving; and the testator's widow died in May, 1896. The son, Robert L. Coleman, married after the death of the testator, and had by that marriage a son and daughter, who with himself are the appellants herein; his wife having since died. Thus the sole members of the testator's family now surviving are a son and two grandchildren, appellants herein, and a grandchild by the deceased son, respondent herein.

The provisions of the will are here set forth at considerable length, in order that all the terms and expressions thereof which may shed any light upon the question of testamentary intent here at issue may be revealed. They are as follows:

"Having from my youth gladly shared my means and earnings with my sisters and brother, increasing and afterwards extending those aids to their children well through life, and helping many others of my relations, I feel that I have in all *their* behalf done my whole duty.

"Having also with a free hand continuously and pleasurably aided many public and private charities, gratuities, reliefs, promotions and benefactions, I think I have done my full duty in all of *that* regard also, and should now

devote · the remainder of my holdings exclusively to the
support and uses of my wife and children.

"To that end I hereby give, devise and bequeath unto
the Union Trust Company of San Francisco, a corporation
organized and existing under the laws of the State of
California and having its principal place of business in
the City and County of San Francisco, in said state, all
my properties, real, personal and mixed and wheresoever
situate—in trust, however, and only in trust upon the con-
ditions, trusts, terms and provisions and for the time or
times hereinafter set forth.

"A. To pay (subject to 'B' next hereinafter) monthly,
if convenient, or at least semi-annually, to my wife, Carrie
M. P. Coleman, eighty (80) per cent of the income thereof
and with the remaining twenty (20) per cent to create a
fund or reserve fund to be used as hereinafter directed. My
said wife shall have such eighty (80) per cent for her own
uses and for the legitimate and ordinary expenses of my
sons—the discretion in which regard I leave with confidence
to her motherly care.

"B. I desire, provide and direct, as soon as my estate
will conveniently and advantageously admit it, and upon
the request or assent of my said wife, that each of my sons
Carlton C. Coleman and Robert L. Coleman, separately and
for his individual account and self, receive and have fifty
thousand ($50,000.00) dollars (that is, one hundred thou-
sand ($100,000.00) dollars, gross, to be equally *divided
between the two*), to be so received in part or whole
amount if they so choose, in real estate at fair valuations,
or in any of my paper securities, at the market values, or
in cash, in installments or in lump, according to the con-
venience of my executors or trustees, and without prejudice
to my other properties, and so that the said sons shall each,
within reasonably short time, receive fifty thousand dollars
as his own separate right, and under his own individual
control, with which to begin a business life of his own choos-
ing and in his own way. This I hope will be invested care-
fully and judiciously by them and each of them, and with
prudence and economy and increased by industry be the
basis of independent fortunes to each; for this is, and will
be, all they are for a long time to receive directly from my
estate, except as hereafter set forth, as their portions

coming eventually from the estate, their fixed shares of the incomes thereof, and it is enough.

"C. The net revenue of all the rest and remainder of my estate, whatever it be, and wherever and howsoever situate, goes to my wife, Carrie M. P. Coleman (as above set forth) to be by her enjoyed, income and interest, according to her sweet pleasure through life, without let or hindrance and without any accounting to any court or tribunal or to any person or power on earth now or after. Then at and after her death, all then remaining of my estate shall remain in said trustee and trust, as hereinafter provided and said trustee, and its successors, shall hold and administer such estate and the fruits and incomes thereon during the lives of my said sons, Carlton C. Coleman and Robert L. Coleman, and annually, quarterly or monthly, if it may be more convenient, pay to them, and each of said sons or their heirs and proper representatives (until both of said sons shall die, but no longer) of them forty (40) per cent or two-fifth parts of the net incomes or revenues of the said estate, and the remaining twenty (20) per cent or one-fifth go to or *remain with the body and bulk of the estate* (to create said fund or reserve fund hereinbefore mentioned), and be held by my executor or trustee as a reserve and safety fund to cover contingencies or extraordinary needs or unusual damages to properties (by fires, or earthquakes, or by exceptional shortages in rents or other income, or resulting from war, epidemic, or other calamity or catastrophe) ; and also so as to provide for and insure funds for full and perfect betterments and maintenance, as nearly as can be, of all buildings and properties requiring maintenance and betterment and additions even, if very desirable, but, all ordinary repairs to buildings shall be paid for monthly, and be a part of current expenses, as are taxes, insurance and commissions, independent of, and in no event be drawn from, the reserve fund, if avoidable; so that my properties shall never be allowed to deteriorate and suffer for want of good care. That is to say in brief, my trustee shall divide the net income into five parts, reserving and re-investing at least one-fifth part, and distributing not exceeding the four-fifths to and between the boys as above and as hereinafter directed.

"And if either of my sons, viz.: Carlton C. Coleman or Robert L. Coleman, should die without legal issue him surviving, but should leave a widow him surviving, then (after the death of my said wife) five per cent of the net incomes of the whole trust property shall (during the life of my other son) be paid to her; and all the balance of the share and interest in my estate of the son so first dying shall go for the benefit of his brother surviving him to the same trust hereby created, subject, however, to the further provisions hereinafter in this will contained with reference to and for the benefit of the respective widows of my said sons, respectively, if either shall leave a lawful wife him surviving.

"While I have in the above set apart twenty (20) per cent or one-fifth of the net income of my property to be retained, reserved and reinvested, by my trustees during the said trust; yet to cover contingencies of the *possible* needs of the beneficiaries under adverse circumstances, and to give them the benefit of more of my estate, if they should really need it, I make this a *modifying*, yet positive, provision, that: If at the end of five years either or both of my sons should require or desire it, and so express their desires in writing, my trustee is authorized and directed to pay to each or either one of them for his account, a sum equal to five per cent of his or their share or shares of all the properties held by the trustee; and, at or about the end of each five years thereafter, through their lifetime, they, the said sons, shall be enabled and authorized to draw from the principal, as well as interest accumulated an additional five per cent, or one twentieth part of the whole of *their* share of property then remaining and existing and of reserved interest, which will, to that extent, be equal to one per cent per annum, and so far reduce the bulk of the estate as well as the accumulated reserve fund (if any there be *then* remaining unused). This is independent of, and separate from the forty per cent or four-tenths of the *annual net income* which they shall have been receiving from year to year; *but if one of my sons should make withdrawals under this provision and the other should not, then I request and direct my trustee to open a separate account with my son who has not so withdrawn this allowed portion, and re-invest it and all such, for the separate ac-*

count of *his individual self, or his heirs and representatives, managing this account and its accumulations, in same manner and same terms as any other ward client, the other brother having no rights, share or interest therein except perhaps as an ultimate heir thereto.*"    (These italics ours.)

Then follow various directions to the trustee concerning the management of the property, and the will proceeds: "The reservations or future distributions of my property have extended thus far mainly to my sons (and in part to the surviving widow of the son first dying) but after the death of both of my said sons I give, devise and bequeath all the remainder of said trust estate immediately and at once in absolute fee simple and without limitation, restraint or restriction or trust or condition of any kind, as follows, to wit: one twentieth or five (5) per cent thereof each to the widows (then living) of my said sons, if either of them shall leave a wife him surviving and such wife shall be living after the death of both of my said sons (but this provision is personal to such widow or widows and on the condition that neither they nor either of them can take unless living after the death of both of my said sons and that no one can take for them, or either of them, by right of representation), and all the rest, residue and remainder (and those words 'rest, residue and remainder' mean and shall mean in every case and instance what remains of said trust estate after such payment to said living widows, or widow, if any; and if there be no such living widows or widow, then such words mean and shall mean all said trust estate) to the heirs of my said sons (*per stirpes* and not *per capita*) born in ceremonial wedlock; and I direct the immediate and unlimited grant, transfer and delivery by such trustee, or its successors as and when above provided."

Then follow provisions for the distribution of the estate in the event of both sons dying "without such heirs as are hereinabove mentioned surviving them."

It will be noted that the testator left his entire estate in trust for the term of the lives of his widow and two sons and the survivor of them. Of the income, twenty per cent was to be set aside throughout the term of the trust, as a reserve fund for the protection of the estate. The remaining eighty per cent was to go to the widow during

her life; and thereafter one-half thereof to each of said sons, "or their heirs and proper representatives." Upon the termination of the trust, the entire estate (except in the contingency of surviving widows of the testator's sons, which did not arise) is to go "to the heirs of my said sons (*per stirpes* and not *per capita*) born in ceremonial wedlock." .The question here involved arises directly under the portion which we have italicized of the "modifying, yet positive provision" above set forth.

In 1906, acting under authority of this provision, Robert L. Coleman applied to the trustee in writing for five per cent of one-half of the trust fund. This was promptly paid to him by the trustee, in the sum of ten thousand dollars, and at the same time the trustee transferred a like amount from the trust fund to a special trust fund for the benefit of William T. Coleman, Jr. This same procedure was repeated twice thereafter, at approximate five-year intervals, with the result that the trustee has paid over to Robert L. Coleman thirty thousand dollars from the .trust fund and has transferred therefrom a like amount to a special trust fund for William T. Coleman, Jr. Thereafter the latter applied to the trustee to pay over to him the thirty thousand dollars so held by it, and it being uncertain as to its duty in the premises, filed in the superior court its petition for instructions. All of the interested parties appeared in response thereto and presented their respective contentions by appropriate pleadings. A hearing was had, resulting finally in the orders from which these appeals are prosecuted, wherein the trial court determined that William T. Coleman, Jr., was entitled to the fund in controversy.

All of the parties hereto, being desirous that this controversy shall be determined solely upon the merits and in accordance with the intention of the testator as expressed in his will, have stipulated that the determination thereof shall be wholly freed from and uninfluenced by any questions of estoppel or waiver or *res judicata* arising out of any past actions of the parties or the trustee, or any preceding orders of the trial court; and we shall so consider it.

If Carlton C. Coleman had been living at the times of the several five per cent withdrawals by Robert L. Coleman, there could be no doubt as to the duty of the trustee

to make a like withdrawal for the benefit of Carlton upon each such occasion. Appellants' contention is that this provision was made by the testator solely for the personal benefit and protection of his two sons, and that no other person can rightly claim any benefit therefrom, or any right thereunder; that the words of donation therein are found in the direction "to open a separate account with my son"; and that the direction to "re-invest it and all such for the separate account of his individual self, or his heirs and representatives," should be construed as if it read "*and* his heirs and representatives," and that so construed it is merely analogous to the *habendum* clause in a deed, descriptive of the interest of the grantee in the property so conveyed to him.

The respondent contends that the phrase, "for the separate account of his individual self, or his heirs and representatives," relates to and defines the purpose of the entire direction to the trustee embodied in the italicized words; that by the expression "re-invest it," the testator meant, "transfer it from the general trust fund into a special trust fund, for the benefit of such other brother, or if he be dead, then for the benefit of his heirs and representatives." So construed, the words of donation being found in the expression "re-invest it," inure to the benefit of the other brother, if living, and to his heirs, if he be dead.

Counsel on both sides have furnished the court with a most able, exhaustive and searching analysis of the words, phrases and provisions of the will. Numerous authorities are cited, but, as has been frequently reiterated, "except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills." This is particularly true when, as here, the will was drafted by a layman without direct assistance from a lawyer. It does not seem highly probable, for instance, that the testator, a layman, by the use of the phrase, "or his heirs," intended thereby merely to create an *habendum* clause which would operate solely to define as absolute the estate thus bequeathed to his son in money or securities. This becomes more apparent when we note that in making provision for possible surviving widows of his sons the testator added the following explanation: "but this provision is personal to such widow or widows and on the condition

that neither they nor either of them can take unless living after the death of both of my sons and that no one can take for them, or either of them, by right of representation.''

The general rules of interpretation of wills were well summarized by the present chief justice, speaking for this court in *Estate of Peabody*, 154 Cal. 173 [97 Pac. 184], as follows:

''The important thing is the intention of the testator (sec. 1317). This is to be ascertained from the words of the will, taking into view the circumstances under which it was made (sec. 1318). All parts of the will are to be considered in relation to each other so as to form, if possible, a consistent whole (sec. 1321). Words are to be taken in their ordinary grammatical sense, unless a clear intent to use them otherwise is apparent and that sense can be ascertained (sec. 1324). Technical words are not to be taken in their technical sense if it satisfactorily appears that the will was drawn solely by the testator and that he was unacquainted with such technical sense (sec. 1327). 'A technical construction of words and phrases, although *prima facie* the one which should prevail, will not go to the extent of defeating any obvious general intention of the testator, since wills are often prepared by those wholly unacquainted with the precise technical force of legal formulas.' ''

Considering the entire will in the light of the foregoing rules, we note that the income during the term of the trust was to be divided equally between the two branches of the family represented by the two sons, and that this rule of division should apply after the death of one son the same as before; that upon the termination of the trust the *corpus* of the estate is to be equally divided between these two branches of the family, ''*per stirpes* and not *per capita.*'' There is no room for doubt that the testator understood the difference between a division *per stirpes* and a division *per capita*. Neither is there any room for doubt that he understood and had in mind while drafting this will that a bequest might go to the heirs or representatives of a deceased legatee, if a contrary intention was not made apparent in the will. He made such contrary intention clearly

apparent in his provision for the sons' widows, but he did not do so in the provision here under consideration.

[1] Remembering that this will was drafted by a layman, a business man, the construction contended for by respondent seems the more natural, reasonable and in accordance with "common sense." When we consider further that it harmonizes completely with the "obvious general intention of the testator," and that the construction suggested by appellants would be quite out of harmony therewith, we are impelled to the conclusion that the decision of the trial court was correct.

Section 1322 of the Civil Code does not appear to be applicable here, because this is not a case of "a clear and distinct devise or bequest," as affected "by any other words not equally clear and distinct, or by inference or argument from other parts of the will."

Appellants make certain criticisms of the language used in the formal order appealed from which are well founded. The phrase, "said Robert L. Coleman having no rights, share or interest therein or thereto," should be modified by the insertion immediately following it of the words, "except perhaps as an ultimate heir thereto," as found in the will. The words of paragraph 7 thereof, "that the said decree of final distribution herein be modified and supplemented accordingly," are not a necessary part of the order and might well have been omitted therefrom. But in view of the stipulation entered into by all parties interested herein no error can be justly claimed here because of their inclusion.

It is ordered that the "formal order" appealed from be modified by the insertion therein of the words above indicated; that as so modified it stand affirmed; that the two informal orders appealed from be affirmed; that respondent have and recover his costs of appeal herein.

Waste, J., Lennon, J., Lawlor, J., Shaw, C. J., Richards, J., *pro tem.*, concurred.