[S. F. No. 14267. In Bank.—November 1, 1932.]

In the Matter of the Estate of HERMINA PERALTA DARGIE, Deceased. JEFFERSON CHANDLER et al., Respondents, v. ST. MARY'S COLLEGE OF OAKLAND, CALIFORNIA, et al., Appellants.

Garret W. McEnerney, Andrew F. Burke, Albert T. Shine and Phillip C. Boardman for Appellants.

Jefferson P. Chandler, *in pro. per.*, Fitzgerald, Abbott & Beardsley, Chandler, Wright & Ward and Frank A. O'Connell for Respondents.

THE COURT.—After further consideration of this cause, we are satisfied to readopt the opinion of Mr. Justice Preston, formerly rendered herein, which is as follows, to wit:

"Appeal from order admitting to probate a purported will of decedent dated March 27, 1929, and denying admis-

sion to probate of a purported will dated December 13, 1928. The question is whether the testatrix intended the later instrument to be a codicil to the earlier one or whether she intended it to stand alone as her last will and testament.

"The testatrix, Hermina Peralta Dargie, a resident of Alameda county, passed away on December 8, 1929, at the age of seventy-one years, leaving an estate consisting of real and personal property of an estimated value of $1,400,000. For many years she had been a widow and she left no children. Her sister, Josefa Peralta Wilson and the five children of said sister survived her and were her next of kin. A Spaniard, Captain Antonio Rodriguez Martin, who had made his home with her from about the year 1920, handling her affairs and apparently enjoying her full confidence and trust, produced, after her death, the documents above mentioned, both of which are wholly written, dated and signed in the handwriting of the deceased and on their face purport to make complete testamentary disposition of her properties.

"The writing of March 27, 1929, upon petition of the executors therein named, was admitted to probate as the last will and testament of decedent, over the objections of certain legatees named in the earlier instrument, their petition to have that instrument also admitted being denied. The court stated that it was convinced that the testatrix did not intend the March will, which expressly revokes all previous wills, to be a codicil to, supplement to or part of the December will; hence it found that the December will, having been revoked, was not the last will and testament of the deceased, but that the March will was her last will and testament, as such entitled to be admitted to probate.

"The document of December 13, 1928, denied probate, opens with the declaration that it is to serve as the last will and testament of the testatrix, all previous testamentary documents signed by her being declared void. It then provides that the sister of the testatrix receive an income of $1,000 a month from the estate, also certain real property and the sum of $150,000 to be paid her over a period of time; that the sister's children each receive the income from $50,000; that Captain Martin receive $250,000; that appellant Tripler receive $25,000; that appellant Summers receive $50,000, and that appellant St. Mary's College receive,

in memory of decedent's brothers, $20,000. After providing for some ten additional legacies, aggregating about $106,000, the instrument names as executors, Captain Martin, William T. Summers and Alexander Doig, and as attorney for the estate Mr. Jefferson Chandler. Following the signature of the testatrix appears this provision: 'Should Mr. Joseph R. Knowland continue as a partner in my estate affairs—I hereby demand that all rights be accorded me, after all is in order I order now, that this large Estate I am leaving back of me—be placed, into a competent Trust Co. to which my executors will agree for the benefits of my family (signed) Hermina Peralta Dargie.'

"The instrument of March 27, 1929, is entitled and first provides as follows: 'Continuation of my last will and Testament. I. I hereby revoke any and all wills previously made by me. II. I desire that my executors as soon as they have sufficient funds in their hands pay my funeral expenses . . . ', etc. Then follow paragraphs numbered III to 30, naming some legatees and providing for total cash bequests aggregating about $239,000 to be paid out of dividends and accumulations from the estate. Decedent's sister is left $50,000 and her children $5,000 each. Paragraph XXVIII appoints as a board of executors Captain Martin, Alexander Doig, Jefferson Chandler and William T. Summers. Paragraph 29 provides that said executors pay to said sister $1,000 per month from dividends derived from the assets of the estate. Paragraph 30 provides that all smaller bequests be paid as soon as possible from accumulations of dividends from the estate. The will then closes as follows: 'The residuary legatees, Captain . . . Martin, to whom I give, devise & Bequeath the full half of my Estate, as I would have done had he been my son — The other half as Residuary Legatee — to my sister Josefa Peralta Wilson. It is my wish, that my Estate be kept intact, for at least twenty years after I pass from life.'

"An analysis of these documents shows that thirty-seven legatees are named in the March will, twenty of whom are not mentioned in the December will; twenty-one legatees are named in the December will, eleven of whom are carried over in the March will for less amounts each, four for the same amount, two for greater amounts, and the remaining four are not mentioned at all; they are appellant St. Mary's

College, which would receive $20,000 under the December will; John Peralta, who would receive $1,000; 'Any poor relation', etc., $10,000, and Mrs. Peralta, $1,000. Appellants here are St. Mary's College, Leonore F. Tripler, left $25,000 by the December will and but $10,000 by the March will, and Panchita Dibblee Summers, left $50,000 by the December will and but $5,000 by the March will.

"The controlling factor on this appeal is, of course, the intent of the testatrix in so far as we are able to ascertain it from the wording of the documents and the circumstances under which they were made, viewed in the light of the well-established rules on the subject of interpretation of wills, which are summarized in *Estate of Coleman,* 189 Cal. 612, 620 [209 Pac. 571], and many other cases.

█ "The document of March 27, 1929, is in itself a complete will, disposing of all decedent's properties. Other than use of the word 'continuation' in the title, there is not a shred of evidence to support the view that the testatrix might have intended it as a codicil to her former will. But for the use of that word, no one would attempt to make such a claim. But appellants do make this claim and to support it they place great reliance upon the fact that the testatrix entitled the instrument: 'Continuation of my last will and testament.' In what sense the testatrix used the word 'continuation', it is impossible to say, but it seems plain that she did not use it in the sense of 'Codicil' as the character of the instrument refutes such a view. The word is not a part of the body of the writing, but only of the heading. It is possible that, having given grave thought to her last will during the period from December to March, the testatrix, again taking pen in hand, had in mind setting forth the final result of her continued and matured consideration of the subject and so wrote the word 'continuation' in the heading, immediately thereafter taking the precaution, as shown by paragraph I, to first revoke all previous wills. No doubt she realized that the December will omitted many whom she wished to remember and failed to make satisfactory disposition of her residuary estate. There is evidence that she had been warned that care should be taken in drawing trust clauses and she may have feared that some defect or ambiguity existed in the so-called trust clause appended to her December will. Be this as it may,

we cannot say that the mere use of the word 'continuation' in the heading is sufficient to show an intent at variance with, and to overthrow, the intent plainly indicated by the character of the instrument and the wording in the body thereof.

■ "Appellants have sought to introduce in evidence a will prepared in 1916 by an attorney for the testatrix, which she apparently used as a model in drafting part of her March will and across the top of which she wrote 'Void March 27 1929 San Leandro'. Appellants argue that as she did not cancel this 1916 will until March, 1929, she had in mind until then that her December, 1928, will was incomplete and, believing that the March continuation completed it, she then wrote said cancellation clause. But on the 1916 will lines were drawn through the signature of the testatrix at the bottom of each page and her signature at the end was removed; there is nothing to show that the will, though preserved for use as a model, was not cancelled prior to addition of the quoted clause in March, 1929, which confirmed the cancellation theretofore made; furthermore, the testatrix knew that her December will cancelled all prior wills. In short, while this additional evidence might afford further grounds for speculation, it contains no convincing proof to sustain appellants' contentions and certainly it is insufficient to compel a judgment in favor of appellants, were a reversal made and a new trial permitted (*Tupman* v. *Haberkern*, 208 Cal. 256 [280 Pac. 970]); hence the request to introduce additional evidence will be denied.

■ "Appellants cite the following circumstances in support of their contentions. Captain Martin testified that in October, 1929, on the eve of his departure for a short trip to Mexico, the testatrix gave him an envelope with directions that he place it in his deposit box for safekeeping. She passed away soon after his return and upon examination the envelope was found to contain the December will. Why, appellants ask, was decedent so anxious in October, 1929, to preserve the will of December, 1928, if she had theretofore revoked it by the will of March, 1929? The March will was then presumably where it was found after her death, in a closet of her home in a tin box, to the value of the contents of which she called attention during her last illness. Crediting the above evidence, many explanations

may be made of decedent's conduct, all of which are based upon pure conjecture. It would be no more than guesswork to accept this incident as showing that decedent intended that both documents should serve as her last will and testament. Respondents ask these counter questions: If decedent considered both documents as her last will, why did she not hand both of them to Captain Martin to be placed in the deposit box? Why did she separate them? Why did she let the December will go out of her hands, but carefully place the March will in a box for valuables in the closet of her own home? Did she perchance believe the envelope she handed Captain Martin contained both documents, or only the March document? To speculate upon the significance of this incident is an idle act in the determination of this cause.

"Appellants claim that the two documents may consistently be interpreted as one will and that decedent so planned; they point out that the December will (leaving out of consideration the so-called trust clause thereto appended) did not dispose of even half of her properties. But in making this contention appellants have had to place in the mind of decedent the understanding and insight of a trained lawyer as to the legal effect and probable result of construing the various conflicting provisions of the two instruments as one. It is not reasonable to believe that this aged woman so knew the law that she could foresee the manner in which these provisions might be legally harmonized in order to dispose of her entire estate under both documents.

"Appellants also point out that the St. Mary's College bequest is the only remembrance made by decedent of her brothers and that she would not have omitted it from the March will, had she intended that will to stand alone. Decedent's thought of making this bequest may have changed, or she may have inadvertently omitted it from the later will. Any weight given to appellants' observation in this behalf is also grounded upon speculation.

"The fact of the matter is that the wording of the instruments themselves, more than any other thing, convinces us that the March will is and was intended to be the last, separate and complete testamentary disposition by the testatrix of all her properties, made after revocation of all her former wills. Other than the revocation clause, the March

instrument contains no word of reference to any other will. It is complete in itself. It needs no outside support to carry out the testamentary scheme therein expressed. It provides, without uncertainty or ambiguity, a reasonable, rational and entire method for the distribution of all decedent's properties. It provides for almost all of those remembered in the earlier will and for many who were not mentioned therein. It sets forth a new and complete scheme, better worked out and showing greater thought, for the care of those most dear to the deceased. For instance, although it reduces the cash bequest to her sister from $150,000 to $50,000 and makes no cash provision for Captain Martin, yet it greatly increases the value of the residuary estate, half of which is given to each of these persons. It also provides for conservation of the estate over a period of time and for payment of cash bequests from income rather than principal. In other words, the entire plan of the March will is such as to induce the conviction that it was an effort on the part of decedent to make a more considered and sounder disposition of her properties and to remedy possible imperfections in the earlier instrument; hence it must stand as her last will and testament.

"Nothing will be gained from further discussion or citation of authorities. It is our conclusion that the court below properly disposed of this cause and its findings have ample and abundant support in the evidence."

The application of appellants to produce and introduce additional evidence is denied. The order appealed from is affirmed.

LANGDON, J., Dissenting.—I dissent.

Before proceeding to a discussion of the issue, I think it is proper to point out that the will of 1916 is entirely relevant and material, and should have been admitted as part of the record herein, for reasons which will hereinafter appear.

The general rules which should guide the determination of this appeal are well established. The intent of the testator is the object of all construction of testamentary instruments. Several testamentary instruments executed by the same person are to be construed together as one instrument; and all the parts of a will are to be construed in relation to each

other to form, if possible, a consistent whole. (See Prob. Code, secs. 101, 103; *Estate of Peabody*, 154 Cal. 173 [97 Pac. 184]; *Estate of Coleman*, 189 Cal. 612 [209 Pac. 571].)

The problem is not simple, and speculation as to the actual state of mind of the decedent is not helpful. Our task is, by the rules of law and sound policy, to determine her intention from the facts, and in accordance with reasonable inferences from these facts. The first and undeniable fact is that the two instruments, while they differ considerably in some respects, and cover much the same ground in other respects, are not wholly irreconcilable. Both can be given effect. Inconsistent provisions of the earlier one may be omitted, and those not inconsistent may be permitted to remain, without injury to the basic scheme of the testatrix. The assertion that the March instrument makes a new and complete disposition of all the property is true, but only for the reason that it contains a residuary clause. Any instrument having a residuary clause completely disposes of the property. But the general residuary clause cannot be deemed irreconcilable with prior gift provisions, and hence the presence of such residuary clause in the March instrument does not give rise to the inference that it is the sole valid testamentary instrument. We must look elsewhere for our inferences.

The second fact is the designation of the March instrument as "Continuation of my last will and testament." This statement is so clear that it defies misinterpretation. No inference is needed to add to its meaning, and it is both unnecessary and dangerous to speculate upon the possible sense in which the term "continuation" was used. "It is undoubtedly settled law relative to the interpretation of wills that the intent of the testator must be extracted from the express terms of his will, and that courts are not permitted to indulge in conjecture or surmise for the purpose of arriving at an intent which is not reasonably to be drawn from the language of the document itself." (*Estate of McKay*, 42 Cal. App. 361, 362 [183 Pac. 574, 575].) "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained." (Prob. Code, sec. 106.) The testatrix has expressly stated that

the writing executed in March is a part of some other and prior instrument, and that the other and prior instrument is her last will and testament. The only instrument which fits that description is the instrument executed in December.

The third fact is that eight months after the making of the March instrument the testatrix directed that the December instrument be placed in a bank vault for safekeeping. Captain Martin testified that in October, 1929, as he was about to leave on a short trip to Mexico, the testatrix gave him an envelope and directed him to place it in his safe deposit box. This envelope contained the December instrument. If, as respondents contend, the March instrument had already revoked it, it is difficult to understand why its preservation should be important. Respondents say that the explanation for such conduct on her part must be purely conjectural and hence useless; and they ask why, if she regarded both instruments as constituting her last will, she chose to separate them, giving one to Captain Martin for deposit, and leaving the other in a box of valuables in her own home. However, eliminating all inferences, the fact remains that she took pains to preserve a document at a time many months after the supposed revocation thereof; and this affords some indication of a belief on her part that the document was still operative.

The final fact of importance centers about the will of 1916, to which reference has already been made. It is contended by respondents that the revocation clause at the beginning of the March instrument was necessarily directed at and effective against the December instrument. That this is inconsistent with the heading of the March instrument—"Continuation of my last will and testament"—is plain; and the weakness of the contention becomes still more obvious when the 1916 will is examined. This appears to be an organized and complete disposition of all her property at the time it was drafted. It is covered with corrections, interlineations, sections crossed out and canceled; the signature at the bottom of each page is crossed out, and the signature at the end is removed. The important fact, however, is that at the top of this instrument appear these words in the handwriting of the decedent: "Void March 27 — 1929 San Leandro." It is a reasonable inference from this fact that the revocation clause in the March instrument was directed

at the 1916 will. We may assume, as respondents contend, that that revocation clause was intended to revoke some prior will, either the 1916 will or the December instrument. It is perfectly reasonable to infer that the 1916 will was intended, for it is clear that she had it in her hands at the time, and took pains to state expressly on the document that from that time on it was void. This statement, it should be remembered, was written on the 1916 will on the very day the March instrument was executed. She made no similar statement at that time or at any other time about the December instrument. On the contrary, months later she committed it to her trusted friend for safekeeping.

My conclusion is that the instrument executed by the decedent in December, 1928, with all the necessary formalities of an holographic will, was never canceled or revoked, either by the express revoking clause in the March instrument or by the provisions of the March instrument. The March instrument, while it might have been a sufficient testamentary disposition and a valid will if standing alone, should, in view of the circumstances, be regarded as a codicil.

The order should be reversed, with directions to the lower court to admit to probate the instruments of December 13, 1928, and March 27, 1929, as the last will of the decedent.