[Civ. No. 10409. First Appellate District, Division Two.—February 11, 1937.]

In the Matter of the Estate of HERMINIA PERALTA DARGIE, Deceased. ANTONIO RODRIGUEZ MARTIN et al., Appellants, v. ELIZABETH SHANKLAND CHANDLER et al., Respondents.

Roscoe D. Jones, Oscar Samuels, S. Laz Lansburgh, George M. Naus and S. Joseph Theisen for Appellants.

Chandler, Wright & Ward, Chandler P. Ward, Gail J. Burck and Morgan J. Doyle for Respondents.

STURTEVANT, J.—Herminia Peralta Dargie died testate on December 8, 1929. She left an estate appraised at $1,140,000, of which the principal assets were approximately one-half of all of the issued stock in Tribune Publishing Company and Tribune Building Company. One of the residuary legatees and several of the other legatees filed petitions in the probate court under the provisions of section 1080 of the Probate Code, asking said court to determine who are entitled to distribution of the estate. From the decree entered by that court the petitioners have appealed.

In so far as pertinent to any questions presented in this proceeding, the will provides as follows:

"Continuation of my last will and Testament.

"I. I hereby revoke any, and all wills previously made by me.

"II. I desire that my executors as soon as they have sufficient funds in their hands, pay my funeral expenses, and the expenses of my last illness.

"III. I give and devise, & bequeath to Kittie Craig Bleimhardt of Phoenix, Arizona, the daughter of my kind friends Dr. and Mrs. Robert Wallace Craig, the sum of five thousand dollars."

(Then follow twenty cash legacies.)

"XXIV. To my sister Josefa Peralta Wilson, I give devise and bequeath, the sum of Fifty thousand dollars, to each of my nieces Francisca, Wilhermina Joan, Mary and Peralta Wilson, all children of my aforesaid sister, I give devise and bequeath five thousand dollars, apiece, not more or less.

. . . . . . . . . . . .

"XXVIII. I hereby appoint as a board of Executors, to act in the discharge of the duty I hereby impose upon them Captain Antonio Rodriguez Martin, Royal Engineer Corps of Spain, Alexander Doig of Oakland, California, Jefferson Chandler of Los Angeles, California and Wm. T. Summers, San Francisco.

"29. That my executors pay to my sister Josefa Peralta Wilson not more, nor less, than one thousand dollars per month, from dividends derived from the assets of my estate.

"30. (1st) All bequests—(smaller) to be paid as soon as possible, and from the accumulations of dividends to be derived, as above—from my estate.

"30. (2d) The residuary legatees Captain Antonio Rodriguez Martin, to whom I give devise & bequeath, the full half of my estate, as I would have done, had he been my son —the other half—as Residuary Legatee—to my sister Josefa Peralta Wilson. It is my wish, that my estate be kept intact for at least twenty years, after I pass from life.

"HERMINIA PERALTA DARGIE"

(1st and 2nd inserted by us for clarity.)

 The trial court made findings to the effect that by paragraph 29 the testatrix intended to make, and did make, a legacy of maintenance in favor of Mrs. Wilson independent of all other legacies specified in the will. All of the appellants claim that such findings are based on a wrong interpretation. We think they are entirely right in making this claim. For some years prior to her death the testatrix had paid monthly as much as $400 or $500 for the account of Mrs. Wilson and her children. As recited above the testatrix possessed properties of a value of over $1,000,000. Nearly all of her income consisted of dividends received from stocks owned by her in the Tribune companies. Such dividends during the year preceding her death amounted to $130,000 and had been constantly increasing. Picking up the will by its four corners it will be noted that paragraphs III–XXVII are direct bequests in sums ranging from $1,000 to $50,000. In paragraph XXIV a bequest of $50,000 was made to Mrs. Wilson. So far nothing whatever is said regarding the time of payment or the fund out of which any bequest will be paid. Every bequest named in paragraphs III–XXVII contains the expression, "I give, devise, and bequeath . . . " In paragraph XXVIII the testatrix names her executors. Then in paragraphs 29 and 30 (1st) the testatrix designates the time, the manner, and the fund out of which the several bequests will be paid. Paragraph 29 is clearly but a proviso to paragraph XXIV. There is nothing whatever in the will to the contrary and such construction is consonant with every other clause contained in it. We think it may not even be said that any ambiguity exists. That paragraph 29 is not a separate bequest appears from the fact that in every other paragraph making a bequest the testatrix used the words, "I give, devise, and bequeath", but such words are wholly omitted from paragraph 29. The latter paragraph contains no words of donation. It does authorize payment, but it creates no gift.

Paragraph II authorizes the making of certain payments but no one would contend that it authorizes the making of any gifts or the creation of any debts. The testatrix intended that her sister, who had been the object of her bounty, should continue to receive monthly payments. Moreover, she designates such payments in the sum of $1,000 per month. She intended that her sister should not unduly squander her legacy and therefore it was to be paid in the sum of $1,000 per month—"not more, nor less". Moreover, such payments were to be paid "from dividends derived from the assets of my estate". That was a fund which she had on hand and as to the amount of which she was fully advised by her manager. The respondents contend the testatrix intended to make three several bequests to her sister—$50,000 as provided in paragraph XXIV, $1,000 a month for a wholly indefinite period claimed to be provided in paragraph 29, and the residuary bequest in paragraph 30 (2d). We think not. Both paragraphs XXIV and 29 refer to a bequest of moneys. If two were intended the testatrix would have written both using the words, "I give, devise, and bequeath." Furthermore, the will shows that the testatrix was not repetitious. She had a good command of language, more than an ordinary familiarity with legal expressions, and a very direct and incisive mind. She did not speak piecemeal.

█ The trial court made findings to the effect that by the word "dividends", as used by the testatrix in paragraphs 29 and 30 (1st), she referred to any and all income of whatever type or source accruing to her estate subsequent to her death. That is not the ordinary meaning of the word "dividends". There is nothing contained on the face of the will showing the testatrix intended to use the word in any other than its ordinary meaning. In short, there is nothing whatever to justify one in saying the word "dividends", as used in the will, is ambiguous in any sense whatever.

█ The trial court also made a finding to the effect that the will provided all bequests, except paragraph XXIV, mentioned in paragraphs III–XXVII should be paid at one and the same time. There is certainly nothing on the face of the will indicating such an intention and there is nothing contained in the evidence admitted at the hearing that will justify the trial court in holding such was the intention. As stated above, having designated all of the bequests excepting

the residue the testatrix then named her executors. Having done so, in paragraph 29 she provided the time, manner and fund out of which the $50,000 bequeathed to Mrs. Wilson should be paid. Immediately thereafter she wrote paragraph 30 (1st). It reads, ''All bequests—(smaller) to be paid as soon as possible, and from the accumulations of dividends to be derived, as above—from my estate.'' The most that can be said is that some of the words are out of order. Nothing approaching an ambiguity is present. We do not see that there is any room for interpretation. It is just as clear and certain, having view to the context, as though it were written, ''All of the rest of the above bequests are to be paid as soon as possible from the accumulation of dividends to be derived as above from my estate.'' That thought is reinforced when one looks at each several legacy. Many of them were being given to charitable institutions. One having the care of the vault of the testatrix's mother, another one was given to Mr. E. H. Hamilton with apprehension that he might not survive her, others were given to close friends who were approximately of the age of the testatrix, others were given to faithful servants or faithful agents who had given long years of service and who were presumptively of advanced years. Accordingly, it was provided in paragraph 30 (1st) that all of such legacies were to be paid *as soon as possible*. Instead of any restriction that language indicates to the writer that the testatrix desired such claims to be paid just as soon as the statute would permit and just as soon as dividends were ''derived from the assets of my estate''. It was clearly the intention of the testatrix that the legacies should be paid to and enjoyed by the legatees and that she was not interested in the heirs of such legatees.

The learned judge of the probate court held that the last sentence in paragraph 30 (2d) was addressed to the executors and was mandatory. In so holding we think he erred. The sentence reads as follows: ''It is my wish, that my estate be kept intact for at least twenty years after I pass from life.'' By that sentence the writer did not expressly direct her words to the executors. Giving the sentence full effect, it cannot be assumed that she was authorizing her executors, in their discretion, to keep the estate intact for twenty years or one hundred years if they saw fit. Yet the words ''for *at least* twenty'' years might include either of those periods. On the

other hand, some of the clauses in the will pertinent to the question now being considered tended to the conservation and keeping intact the holdings of the testatrix. Having so provided the testatrix then, in paragraph 30 (2d), bequeaths those holdings half and half to her sister and to Captain Martin "as I would have done, had he been my son". In them she had the utmost confidence and held them in the greatest affection and, what could be more natural than that she should write, addressing herself in effect to those residuary legatees, "It is my wish, that my estate be kept intact for at least twenty years, after I pass from life." Those two persons, and they alone, would be in a position to carry that wish into force and effect.

That the foregoing conclusions are sound finds support in other language contained in other passages contained in the will. As to her executors the testatrix was seldom invitatory, but her phrases were of firm commands. As to clear-cut commands, the vocabulary of the testatrix was not wanting.

In an endeavor to reenforce their contentions the respondents place a strained interpretation on words contained in paragraph 30 (2d). They emphasize the words "the full half of my estate". They contend that expression refers to the amount of the estate as it stood at the time of the death of the testatrix. The contention offends the intelligence of the testatrix. (1) She knew she was in debt $120,000. (2) She knew the administration of her estate would create a large expense. (3) She knew her last illness and burial would create other large expenses. (4) And she also knew that she had provided cash legacies in the sum of $239,000. She provided expressly how the fourth item was to be paid. She expressly provided that the third item was to be paid. And, although no express language was inserted as to how items one and two were to be paid there was no language to the effect they would not be paid; but, it is presumed she knew they would be paid together with all taxes. It is patent that the full half of her estate could be conveyed only after such charges were deducted. The use of the words "residuary legatees" in the same paragraph clearly shows that in that paragraph the testatrix was not disposing of, nor attempting to dispose of, anything except the residue.

The respondents contend that distribution of the cash legacies may not be had until all debts and expenses have

been paid and there has been accumulated from dividends a fund sufficient to pay at one and the same time all cash legacies. The appellant Brady contends that the said legacies were demonstrative and therefore they were payable at the end of one year. That contention would be sound in some cases but not in all cases. (Probate Code, div. 1, chap. 8.) The provisions of the statute are in all cases to be controlled by the testator's express intentions. (Sec. 163.) It is not even claimed that the $50,000 bequest to Mrs. Wilson was payable at the end of one year after the death of the testatrix. The limitations contained in paragraph 29 of the will provided otherwise. While the language is not so strong, nevertheless, we think by the terms of paragraph 30 (1st) the other bequests mentioned in paragraphs III to XXVII were not, as a matter of law, payable at the end of one year unless "the accumulations of dividends", at that time were sufficient to pay them.

The respondents assert that their construction of the will but follows its terms and gives force and effect to all of its parts. That assertion is not sustained in many important particulars. In so far as they would support a claim for cash payments to Mrs. Wilson in any sum in excess of $50,000 the will does not so provide. The claim that the distribution of the estate should be delayed a period of twenty years is not sustained by anything written on the face of the will. Moreover, the construction contended for gives no force or effect to the phrase "as soon as possible" as written in paragraph 30 (1st).

All we have said we believe to be in accord with and not in conflict with *Estate of Dargie,* 216 Cal. 667 [15 Pac. (2d) 849].

Counsel have respectively most completely argued the facts and have filed exhaustive briefs containing nearly every possible citation applicable to a decision in this case. The fundamental rules are statutory. Other pertinent rules have been settled in this state. None of the rules are in dispute; but, the question before us is one of applying such rules to the facts. We have found the burden to be that of assembling the facts we believe to be competent and pertinent, acting at all times within said rules. Being so guided, the decision has even then taken undue proportions.

The decree appealed from is reversed and the trial court is directed to reframe its findings and conclusions in accordance with the foregoing views and enter a judgment and decree accordingly.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 13, 1937, and applications by appellants and respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 12, 1937. Curtis, J., voted for a hearing.