[Sac. No. 650. Department Two.—December 4, 1899.]

In the Matter of the Estate of E. I. UPHAM, Deceased.

Wills—Date of Devises and Bequests—Alteration of Common Law by Code.—Sections 1332 and 1333 of the Civil Code have the effect to abrogate the old common-law distinction by which devises spoke as of the date of the will, and bequests as of the date of the testator's death; and both devises and legacies in this state speak as of the latter date.

Id.—Residuary Devise—Disposition of Lapsed Devise.—Where there is a valid residuary devise, the property mentioned in a lapsed devise goes to the residuary devisee, and not to the heirs, unless a contrary intent is clearly expressed in the will.

Id.—Residuary Devise to Charitable Use.—A residuary devise to the legally constituted and qualified trustees or managers of a Good Templars' Orphans' Home, in a specified locality, "in trust for the use and benefit of the orphan children of said institution," is a valid devise of the residue of the estate to a charitable use.

Id.—Liberal Construction of Charities.—Charities, both as to the trustees and the beneficiaries, are more liberally construed than are gifts to individuals.

Id.—Devise of Charity to Unincorporated Body—Superintendence of Court of Equity—Effectuation of Trust.—The fact that the trustees of the designated orphans' home to whom the devise was made, were not themselves an incorporated body, though

selected biennally under the auspices of an incorporated grand lodge of Good Templars, to manage and control the orphans' home, cannot affect the validity of the charity. A court of equity will not allow a charitable use to fail for want of a legal trustee; and, if the founder describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of equity, and the court will appoint trustees, if necessary to effectuate the trust.

ID.—PROVISION FOR RATABLE APPORTIONMENT OF DEVISES—RESIDUARY DEVISE NOT REVOKED.—A residuary devise, following special devises and bequests, is not revoked by a subsequent paragraph providing that the foregoing devises are to be increased or diminished ratably, with the exception of two devises specified, if the estate is more or less than sufficient to pay the devises and bequests; and such provision does not prevent the falling into the residuary devise of lapsed devises or legacies, or invalid and void devises or legacies.

ID.—RESIDUARY DEVISE, HOW CONSTITUTED.—No particular mode of expression is necessary to constitute a residuary devise. It is sufficient if the intention of the testator be plainly expressed in the will that the surplus of the estate, after payment of debts and legacies, shall be taken by a person there designated.

APPEAL from an order of the Superior Court of Solano County denying a petition for partial distribution of the estate of a deceased person. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

Freeman & Bates, for Appellants.

J. M. Walling and Robert Thompson, for Trustees of Good Templars' Home for Orphans, Respondents.

John M. Gregory, for Minor and Unrepresented Heirs.

McFARLAND, J.—E. I. Upham died leaving a will which, on its face, purports to dispose of all his property. His brothers, Joseph M. and Lorenzo Upham, who are his next of kin and only heirs at law, filed a petition in the probate court for a partial distribution to them of certain parts of the estate which they claim had not been disposed of by the will, and therefore went to them as heirs. The court held that the whole estate had been disposed of by the will, and that as petitioners were not devisees or legatees they were not entitled to partial dis-

tribution. The petition was denied, and from the order deny-
ing it the said brothers Joseph M. and Lorenzo appeal.

By paragraphs I, II, and III of the will a certain piece of
land known as the Vacaville Orchard, and ten thousand dollars
in money, are given to Martha Muzzy, a relative of testator, and
also sufficient funds to take care of the family cemetery lot;
by paragraph IV the sum of ten thousand dollars is given to
Sarah Muzzy; by paragraphs V, VI, VII, and VIII the sum of
five thousand dollars each is given to certain named legatees;
by paragraph X certain small sums of money are given to em-
ployees of the testator; and no objection is made in this case
to any of the foregoing paragraphs. The contention of appel-
lants is based upon paragraphs IX, XI, and XII.

By paragraph IX, which is quite long and somewhat com-
plicated, forty thousand dollars, or, in lieu thereof, a quantity of
land equal in value to that sum of money, is given to the execu-
tors of the will in trust for the use and benefit of the minor
children of the appellants; and it is claimed by appellants that
this trust, owing to certain provisions which it contains, is
void, and that therefore the property mentioned in it is undis-
posed of by the will and goes to them as heirs at law. Under
our views of the case, however, it is not necessary to pass upon
the validity of this trust clause, for if the will creates a residu-
ary devisee and legatee, as we think it does, then the latter takes
the property described in any devise or legacy which for any
reason fails or lapses, and the same does not go to the heir.

Section 1332 of our Civil Code declares the rule above no-
ticed as follows: "A devise of the residue of the testator's real
property passes all the real property which he was entitled to
devise at the time of his death, not otherwise effectually de-
vised by his will"; and section 1333 is the same, except that it
refers to a bequest of personal property instead of a devise of
real property. These sections abrogate the old common-law
distinction between devises of real property and bequests of per-
sonal property, to the effect that a devise speaks from the date
of the will and a bequest from the death of the testator, and
according to which distinction it was generally held that prop-
erty mentioned in a void or lapsed devise did not go to the
residuary devisee. But under the old authorities, before any

change was made by statute, it was uniformly held that lapsed bequests went to the residuary legatee and not to the heir, and our statutory provisions above referred to are so clear to the point that lapsed devises take the same course that further authorities upon the question seem needless. However, in New York the statutory law is that a will which in terms disposes of all the testator's real property shall be construed to pass all the real property which he was entitled to devise at the time of his death; and under that statute it has been uniformly held in that state that property mentioned in a lapsed devise goes to the residuary devisee and not to the heir, unless a contrary intent is clearly expressed in the will. (*Ricker v. Cornwell*, 113 N. Y. 115; *In re Benson*, 96 N. Y. 499; 48 Am. Rep. 646; *Cruikshank v. Home for the Friendless*, 113 N. Y. 337; *Carter v. Board of Education*, 144 N. Y. 621; *In re Bonnet*, 113 N. Y. 522; and see, also, *Floyd v. Barker*, 1 Paige, 480; *King v. Woodhull*, 3 Edw. Ch. 79; *King v. Strong*, 9 Paige, 94; *Tindall v. Tindall*, 24 N. J. Eq. 512.)

The main question in the case at bar, therefore, is whether or not a residuary devisee and legatee is created by the will. Such devisee and legatee is clearly created by paragraph XI of the will, if the trust created by that paragraph is not void for other reasons. The paragraph is as follows: "XI. I give and bequeath to the legally qualified and constituted trustees or managers of the Good Templars' Orphans' Home of Vallejo, said county of Solano, in trust for the use and benefit of the orphan children of said institution, any residue and remainder of my estate after carrying out my hereinbefore legacies and bequests." It is contended by appellants that this trust is void for reasons which are, substantially, these: 1. That the bequest is not charitable because the beneficiaries are not named with sufficient definiteness and certainty; and 2. That there are no trustees named capable of taking the property. We do not think that either of these contentions can be maintained. It must be remembered that charities—both as to the trustees and the beneficiaries—are more liberally construed than are gifts to individuals. (See 2 Story's Equity Jurisprudence, secs. 1165-67 et seq.) That the gift here was for charity is beyond question. It was shown by the evidence—which was properly admitted, under

section 1340 of the Civil Code—that the Good Templars' Orphans' Home at Vallejo had been in existence for a great many years, that its purpose was to take care of orphan children, that it accommodated about two hundred of such children, and that about that number were usually and continuously maintained there. To sustain the proposition that this constitutes a "charity" within the legal meaning of the word no further authority is necessary than that of *People v. Cogswell*, 113 Cal. 129; but the truth of the proposition is further illustrated by the numerous cases referred to in the opinion of the supreme court of the United States in *Russell v. Allen*, 107 U. S. 163. It is contended, however, that the trust is void because the parties named as trustees are incapable of taking the property. The trustees of the Orphans' Home, it is true, do not constitute a corporation. It was organized under the auspices of the grand lodge of the Independent Order of Good Templars of the State of California, which is a corporation, and it is under the management and control of a continuous board of trustees, consisting of eight persons, one-half of whom are selected every two years by the order. These trustees seem to be appropriate persons to take charge of this charitable fund, and manage it for the purposes of the trust; but even if it should be held that in a strict legal sense they are not capable of taking, yet the charity would not fail for that reason. A court will not allow a charitable trust to fail for want of a legal trustee. Of course, in this country courts of equity will not go so far in executing indefinite charities as the courts of equity went in England under the statute of 43 Elizabeth, for there if it could be discovered from a deed or will that anything in the nature of a charity was intended, however vague or indefinite, the chancellor would devote it to some sort of a charity. But in this country courts have been extremely liberal in construing charities, and under principles analogous to the doctrine of *cy pres* have enforced trusts far more indefinite and inexact than the one here involved. The rule upon this subject is very fully laid down by the supreme court of the United States in *Russell v. Allen, supra,* as follows: "By the law of England from before the statute of 43 Elizabeth, chapter 4, and by the laws of this country at the present day (except in those states in which it

has been restricted by statute or judicial decision, as in Virginia, Maryland, and more recently in New York), trusts for public charitable purposes are upheld under circumstances under which private trusts would fail.   Being for objects of permanent interest and benefit to the public, they may be perpetual in their duration, and are not within the rule against perpetuities; and the instruments creating them should be so construed as to give them effect, if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form or manner pointed out by him cannot be followed.   They may, and indeed must, be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal charity.   If the founder describes the general nature of  the charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery; and an omission to name trustees, or the death or declination of the trustees named, will not defeat the trust, but the court will appoint new trustees in their stead."   In *Schmidt v. Hess*, 60 Mo. 591, a gift had been made to the "Lutheran Church," which was unincorporated, and in a suit brought by the trustees of the church they were permitted to show to what church the gift applied; and the court, among other things, said: "No doubt is entertained that the gift under consideration is a charity, and falls within the meaning of the rules of chancery.   (2 Story's Equity Jurisprudence, sec. 1164, and cases cited.)   And although in consequence of the nonincorporation of the church for whose benefit the grant was made there was no one *in esse* at the time of making the donation capable of being the recipient of the trust, yet, the use being a charitable one, a court of equity, having ascertained the intent of the grantor, will not allow the grant on that account to fail, but will see to its effectuation." (Citing cases.   See, also, *Lilly v. Tobbein*, 23 Am. St. Rep. 887.) And in section 730 of 2 Perry on Trusts a number of instances are given of charities held to be good which illustrate the principles which sustain the gift to the Orphans' Home here involved.   The following is the language there used to which we refer: "It is well settled that the devise of a charitable use to

church wardens, although not a corporation capable in law of holding and transmitting property, will be sustained; so to an institution neither established nor incorporated in the life of the donor; and so a devise to certain officers or their successors in office, or, if they are incapable of executing the trust, then to a corporation to be formed for the purpose, was held by the supreme court of the United States to be a good devise and capable of being carried into effect. A gift to a corporation by a misnomer is good for a charitable purpose, if the corporation can be identified; gifts in trust to voluntary associations for charitable purposes have been held good; and so of gifts to churches, societies, conferences, yearly meetings of Friends, and families of Shakers, and other organizations. These bodies, or *quasi* corporations, have been considered so far under the control of a court of equity that they would be compelled to execute the duties of the trust imposed upon them, and could be dealt with for a breach." Therefore, under the principles of the authorities above noticed, the gift to the trustees of the Orphans' Home is a valid charity; and, this being so, a residuary legatee and devisee was thus created, to whom lapsed legacies go under the statutory provisions above quoted. There are no words in the will expressing a contrary intent, and the rule is that "where the residuary bequest is not circumscribed by clear expressions in the instrument, and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid disposition, or other reason." (*Riker v. Cornwell, supra.*) With respect to other objections made by appellants, it may be said that we see no reason why a court of equity cannot enforce this trust, or why there are no beneficiaries in whose interest it could be enforced. In the latter respect there is no difference between this case and any other case where the benefit is for an indefinite number of persons. We see nothing in the objection that it is not stated in the will whether the benefit is to be for orphans or half orphans; the will uses the word "orphan," and that has a legal meaning. If the clause creates a charity, it is not obnoxious to the law against perpetuities, and is expressly warranted by section 1313 of the Civil Code. No question is raised here as to the gift being for more

than one-third of the estate. The contention that too much discretion is given to the trustees is answered by the citations and quotations from authorities hereinbefore given.

It is contended by appellants that paragraph XII revokes, or annuls, or renders inoperative paragraph XI. Paragraph XII is as follows: "If my estate should be more or less than sufficient, after paying my debts, to provide for and pay all the above-mentioned devises, bequests, and legacies, then all the said devises, bequests, and legacies shall be increased or diminished ratably, except the provisions for the said cemetery lot and the devise to Martha Muzzy of the parcel of land of sixty acres in Vaca valley, known as the Vacaville Orchard." This paragraph, construed in the light of the whole will, may, perhaps, be considered as to some extent uncertain and ambiguous. Respondent contends that it simply provides for the possible contingency of the residue going to the Orphans' Home being greater than one-third of the estate. But, however that may be, it certainly cannot be construed as destroying, or as intending to destroy, paragraph XI. Paragraph XI is one of "the above-mentioned devises, bequests, and legacies"; and how can a subsequent clause which expressly refers to and recognizes as existing a previous clause be held to revoke or destroy the latter, where there are no operative words to that effect, or which express any such intent? Moreover, it is a rule of construction of wills—declared by our code (Civ. Code, sec. 1322)—that: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will"; and, applying this rule to the case at bar, it is plain that the "clear and distinct" provisions of paragraph XI are not revoked or destroyed by the language of paragraph XII, or by any "inference or argument from other parts of the will."

The foregoing facts make it unnecessary to consider the question whether, if paragraph XII could be construed as revoking paragraph XI, it would not follow that paragraph XII itself constituted as residuary legatees the other devisees and legatees whose devises and legacies were to be increased "ratably"—thus leaving appellants in no better position. On this point, how-

ever, it may be well to observe that, as said in *Morton v. Woodbury*, 153 N. Y. 243: "No particular mode of expression is necessary to constitute a residuary legatee. It is sufficient, if the intention of the testator be plainly expressed in the will, that the surplus of the estate, after payment of debts and legacies, shall be taken by a person there designated." And where a testator gives all of his property remaining after the payment of specific gifts, though the fund be estimated in money, the gift of that which thus remains is not specific, but carries everything which has not been effectually disposed of by reason of lapses, or invalid and void devises or legacies. (*Hulin v. Squires*, 63 Hun, 352; 18 N. Y. Supp. 309; *Bland v. Lamb*, 2 Jacob & W. 399; *Carter v. Taggart*, 16 Sim. 423.) In the case at bar, there is no hostility or contest between the various devisees and legatees. They recognize each other's rights as expressed in the will, and stand together in defending it against the assaults of appellants.

The conclusions above reached are strengthened by the consideration that it was the clear intent of the testator, expressed in the will, that no part of his estate should go to appellants; and this consideration is given great weight in all the decided cases where questions similar to those arising in the case at bar were involved. We do not see how the disputed clauses of the will, which we hold to be good, can be overthrown without wrongfully applying to a charity those strict and technical rules which can be rightfully invoked only as against private trusts.

The order appealed from is affirmed.

Henshaw, J., and Temple, J., concurred.