[Civ. No. 8591. Third Dist. June 30, 1955.]

Estate of AUGUST KELLER. JULIUS KELLER et al., Appellants, v. BANK OF AMERICA TRUST AND SAVINGS ASSOCIATION, as Executor, etc., et al., Respondents.

*Assigned by Chairman of Judicial Council.

234

Charles Lederer and Otto A. Hoecker for Appellants.

John V. Copren and Paul B. Baker for Respondents.

FINLEY, J. pro tem.*—This appeal is from the decree of distribution entered in an estate and involves a dispute

*Assigned by Chairman of Judicial Council.

over the interpretation placed by the probate court upon the provisions of a will.

August Keller died on November 18, 1951, leaving a witnessed will which had been prepared by an attorney who became one of the attesting witnesses and who also became attorney for the executor for purposes of probate. The dispute concerns the difference in construction placed by the parties upon the following provisions of the will:

"First: I direct my Executor hereinafter named to pay my just debts as soon as it has funds of my estate and in hand sufficient for the purpose, and I also direct my said Executor to pay all taxes levied and assessed against my property and all inheritance taxes and estate taxes.

"Fourth: I give, bequeath and devise to my brothers Julius Keller, Eugen Keller and Adolf Keller and to my sisters Pauline Schefter and my sister Margaret, whose last name I cannot recall, twenty (20%) per cent of the properties of my estate to be divided equally between my said brothers and sisters, all of whom reside in Switzerland.

"Fifth: I give, bequeath and devise all the rest, residue, and remainder of my estate unto my cousin Wilhelm Keller and his wife Sanfira Keller and their daughter Clara Keller to be equally divided between them, and all of whom are residing in Modoc County, California."

Appellants take the position that provision numbered "Fourth" should be interpreted to mean that the legatees and devisees thereunder are entitled to distribution of 20 per cent of the gross estate and that all debts, costs of administration and taxes should be paid from that portion willed to the so-called residuary legatees under paragraph "Fifth." The probate court disagreed with this interpretation and in the decree of distribution adopted respondents' view, which is that all debts, costs and taxes should be deducted from the gross estate and that the net only should be distributed, 20 per cent to appellants and 80 per cent to respondents.

Appellants have urged several technical reasons in support of their position. Most of them are not applicable for it appears here that the intent of the testator can be gathered from the wording of the will.

Over the centuries covering the history of wills and the probate thereof, many ingenious rules have been promulgated as aids in the interpretation of testamentary provisions which have been questioned. ■ Throughout the numberless decisions on the subject, however, there has survived the cardinal

rule that what the testator intended to accomplish is to be gathered if possible by giving the most ordinary interpretation to the language used without resorting to specious and fanciful reasoning. (*Estate of Puett,* 1 Cal.2d 131 [33 P.2d 825]; *Estate of Heard,* 25 Cal.2d 322 [153 P.2d 553]; *Estate of Bourn,* 25 Cal.App.2d 590 [78 P.2d 193].) ▇ Courts are not invested under the guise of construction with the privilege of rewriting a testator's will. (*Estate of Beldon,* 11 Cal.2d 108 [77 P.2d 1052]; *Estate of Bendell,* 59 Cal. App.2d 165 [138 P.2d 378]; *Estate of Swan,* 5 Cal.2d 635 [55 P.2d 1171].) ▇ The testator's words and all of them should be considered in the light of common sense and given effect if it appears that violence to this simple virtue will not result in so doing. (*Estate of Puett, supra.*) ▇ It is common knowledge not only among courts and lawyers but also among others who deal with the problem of accurate expression, that people, even lawyers and judges many times use words without pausing to give careful and detailed consideration to each possible aspect or shade of meaning. When actual ambiguities occur, rules of interpretation and construction, if realistic, are helpful. But the fallacies underlying a strained construction tailored by the advocate to effect a desired result are usually apparent to those interested only in determining what the testator sought to achieve.

We can see nothing unusual or particularly challenging in the layout, provisions or wording of this will. ▇ We are convinced that consideration should first be given to the order in which the provisions appear, for, unless some contrary design is apparent, what could be more logical in applying rules of interpretation than to say that each subsequent provision in a will must be considered in the light of that which has gone before. In the will before us the draftsman specified the order in which the mandates thereof were to be carried out and first on the list, and so specified by use of the word "First" at the beginning of the paragraph, is that the executor is to pay the testator's "just debts" and "all taxes levied and assessed against my property and all inheritance taxes and estate taxes." It is not provided that these payments are to be made from any specific fund or the residue of the estate. In this connection appellant cites section 750 of the Probate Code, which, of course, is controlling if no contrary testamentary intent appears from the language of the will and if those mentioned in paragraph

"Fifth" of the will are to be considered "residuary legatees and devisees."

The only direction in paragraph numbered "First" is that the items therein mentioned are to be paid. It is argued by respondent, and not without some justification, that this provision is redundant because the law requires these things to be done anyway. This may be true, but having chosen to include such a provision, if the testator had any impelling desire to have these obligations paid from the residue or any fund other than the general corpus of his estate this could easily have been accomplished by the inclusion of not more than three words, such as "from the residue." We recognize that, even though a provision directing the payment of debts, costs of administration and taxes is ordinarily redundant, a great many wills as a matter of form do carry such provisions. Under the accepted rules of interpretation and sound reason, this provision cannot be ignored, any more than can any other provision, if to give it effect would place no strain upon the construction as a whole. All things considered, we find the simplest and most obvious interpretation to be that the items therein mentioned should be paid before there is a division of the assets. (*Estate of Hinckley,* 58 Cal. 457; *Estate of Bauer,* 59 Cal.App.2d 152 [138 P.2d 717]; *Estate of Dargie,* 19 Cal.App.2d 215 [64 P.2d 1131].)

The principal point upon which appellants predicate their claim to preferential treatment is that in paragraph numbered "Fourth" which contains the provision for their participation, the words "properties of my estate" are used in contradistinction to the words "rest, residue and remainder of my estate" as used in paragraph numbered "Fifth." It is worthy of note, however, that at the time of the death of the testator the assets of his estate consisted primarily of ranches or interests in real estate and in cattle and other personal property aside from cash. From the original inventory it appears that the actual cash asset amounted to less than $5,000, whereas the total estate amounted to $159,136.23. Therefore, as a matter of fact, whether the testator used the words "properties of my estate" or "the rest, residue and remainder of my estate," he was apparently still referring to his total assets. He made no mention of specific lands or goods in any dispositive provision. This being so, it seems obvious that the testator had in mind no thought of creating a salient distinction when he used the words "properties of my estate" in paragraph "Fourth" and "the rest, residue

and remainder of my estate," in paragraph "Fifth." ▆ Furthermore, the fact alone that different terms were used constitutes no legal mandate that some distinction must of necessity be drawn. (*Estate of Heard, supra.*)

Appellants complain that in not adopting their interpretation the probate court in effect read the word "net" into paragraph Fourth when it is not there. By the same token it is just as reasonable to say that had the court adopted appellants' interpretation it would of necessity have read the word "gross" into that provision and neither is that word there.

▆ A testator may, of course, provide for preferential treatment of the members of a class, and the rules of testamentary construction sometimes require it where necessary to resolve actual uncertainties. But where the testator expresses his intention and where it is reasonably apparent from a consideration of the will as a whole what his desire was, this should be given effect without resort to application of artificial rules. (*Estate of Beldon, supra.*) ▆ The probate court here made its finding, and, although an appellate court is not bound by a trial court's interpretation of a legal document (*Wagner* v. *Shaponer,* 123 Cal.App.2d 451 [267 P.2d 378]; *Leonard* v. *Huston,* 122 Cal.App.2d 541 [265 P.2d 566]) we are satisfied that in this case the conclusion of the trial court is the one which would be reached by nearly every lawyer or layman upon a reading of the will without bias or any personal interest in the outcome. This would appear to be the most sensible and reliable test.

*Estate of Kirby,* 199 Cal. 135 [248 P. 517], is cited and relied upon by respondent as a case much the same in its general aspects as the case at bar. With this we agree. A similar point was involved and the manner of its resolution has been a guiding factor here. Appellants complain that: "The opinion in the Kirby case is noteworthy for the complete absence of any citations of authorities, code sections, or cases." They then continue: "Appellants surmise that the learned Justices must have had in mind the principle enunciated in other cases that 'very little aid can be procured from adjudged cases in the construction of wills.' " Appellants' "surmise" is undoubtedly well founded, for no two wills are exactly alike and but few are sufficiently similar in the wording of dispository provisions so that a decision interpreting one would be of any great help in interpreting another. Evidence of

this is the dearth of appellate decisions construing identical or closely worded provisions under comparable circumstances. We believe that this demonstrates the truth of the following quotation set forth by appellants in their opening brief:

"In support of their construction of the will learned counsel for respondent have cited and discussed very many decisions of courts of last resort. It may be said as to all of them that none disputes the paramount rule that the ultimate question is the intention of the testator as expressed in the will, and that technical rules of intrepretation must yield to an intention clearly expressed. The real question discussed in all of them is, What did the testator mean in view of the language he has used in his will, in the light afforded by certain rules of interpretation which must prevail where a contrary intent does not clearly appear on the face of the will? Such is the question here involved. We have said: 'Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value. Except for the establishment of general principles, very little aid can be procured from adjudged cases in the construction of wills.' (*Estate of Henderson*, 161 Cal. 353, 357 [119 P. 496, 498]. See also *Rosenberg* v. *Frank*, 58 Cal. 387; *LeBreton* v. *Cook*, 107 Cal. 410, 416 [40 P. 552].) (*Estate of Wilson*, 184 Cal. 63, 67 [193 P. 581].) *Estate of Henderson*, 161 Cal. 353, 357 [119 P. 496], *Estate of Major*, 89 Cal.App. 238 [264 P. 542]; *Rosenberg* v. *Frank*, 58 Cal. 387."

Appellants argue at some length that, inasmuch as the legatees and devisees provided for in paragraph Fourth are brothers and sisters of the testator and those in paragraph Fifth are only a cousin and this cousin's wife and daughter, the rules of construction require us to indulge in the presumption that the testator's intent and purpose was to favor his brothers and sisters over the cousin and his family. The answer to this argument seems to be that it lay within the power of the testator to favor them to any extent he chose, even up to leaving them his entire estate, had he seen fit to do so. The fact remains that he left his brothers and sisters only 20 per cent of his properties or estate while the remainder of 80 per cent was left to the cousin and his family. Having expressed his preference by a percentage weighing so heavily in favor of the cousin and his family, we are not convinced that, contrary to this express election, we are entitled to

indulge in any presumption which does not accord with it merely because certain rules laid down in the Probate Code provide that legal presumptions may be resorted to as an aid to `interpretation of an otherwise ambiguous testamentary provision.

Finally, appellant urges that a different construction should be placed upon use of the words ''properties of my estate'' than upon the words ''rest, residue and remainder of my estate'' because an attorney drew the will and, therefore, under the rule announced in Estate of Bourn, *supra,* ''the presumption that legal terms embodied in the will are used in their legal sense is all but conclusive.'' This rule, however, is to be no more preferred than any other of the general rules laid down as aids in construction. Upon seeking to apply the rule above quoted from Estate of Bourn, the question arises as to just what is to be defined as a legal term. At what point do common words undergo the change from common words to legal terms ·or words used in their legal sense? It is conceded that the expression ''rest, residue and remainder'' is one common to testamentary phraseology, but we have doubt that this fact alone would be sufficient to initiate its component terms into such an exclusive society of legal words as ''fee title,'' ''easement,'' ''garnishment,'' ''demurrer,'' etc., which are unquestionably legal words used in a legal sense wherever they appear. All who are familiar with the law recognize that the word ''remainder'' is one familiar to the common law, and when used in connection with an estate in real property has a very definite legal significance. When it is used to designate such an estate it may obviously be said to be used in a technical or in its legal sense. ▆ But, as pointed out in *Estate of Upham,* 127 Cal. 90 [59 P. 315], and *Estate of Lawrence,* 17 Cal.2d 1 [108 P.2d 893], ''No particular mode of expression is necessary to constitute a residuary legatee.'' We take this to mean that no particular clause or expression has yet been adopted as one which, when used by a testator, will impart to each word used a technical legal significance and thereby *ipso facto* constitute all recipients thereunder residuary legatees.

▆ Appellants in their briefs have set forth several excerpts, one from Webster's New International Dictionary and several from decided cases, in support of their claim that those named in paragraph Fifth are residuary legatees. Generally stated, the language quoted is to the effect that the ''residue'' or ''remainder'' of an estate is that portion left

over: "after the satisfaction of all *debts* and previous devises and bequests." (Webster's New International Dictionary, second edition, page 1966; *Security-First Nat. Bank* v. *Wellslager*, 88 Cal.App.2d 210 [198 P.2d 700].) "After payment of *debts* and legacies . . ." (*Estate of Lawrence,* 17 Cal.2d 1 [108 P.2d 893].) "After satisfying bequests and devises." (69 C.J. 413, § 1472; *Childs* v. *Gross,* 41 Cal.App.2d 680 [107 P.2d 424].) (Emphasis added.) It will be noted that in the above quotations where emphasis has been added, the so-called "residuary" clause refers to that part of the estate remaining over after the bequests and also *debts* have been paid. These definitions are not in conflict with the provisions of section 750 of the Probate Code which merely directs that if no other provision for payment of "debts" is made by the testator or if the provision is made, but is inadequate for the purpose, and if that portion of the estate not disposed of by the will is insufficient, then the *debts,* expenses of administration or family allowance must be paid from "property given to residuary legatees and devisees." It appears, therefore, that the expression "rest, residue and remainder" has not been endowed by use or decision with any specific unequivocal technical definition. Certainly the authorities cited do not support appellants' conclusion that use of those words is consistent only with the definition of a residuary legacy set forth in Probate Code, section 161, subdivision (4).

Appellants do not attempt to define the words "the properties of my estate" further than to say that the legacy thereby provided falls within the classification of "general legacies" as defined in Probate Code, section 161, subdivision (5). The question remains unanswered by appellants, excepting by the extent of their claim, whether they consider that the words "the properties of my estate" refer to real property only, to all real and personal property excepting the cash assets or to all real and personal property including cash. The record shows that all real and personal property has been sold and that the estate to be distributed now consists entirely of cash. What effect, if any, this might have upon the claims of the parties is not discussed.

From an overall consideration of the questions presented, together with our interpretation of what was intended by the Legislature under the provisions of sections 950-956 and section 970 of the Probate Code and sections 14101 et seq. of the Revenue and Taxation Code, we conclude, and so hold, that the proper and logical interpretation of the provisions of

this will is that the testator intended to divide his entire estate in proportions of 20 per cent and 80 per cent after all debts, expenses of administration and taxes were "First" paid.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 17, 1955.