[Civ. No. 25831. Second Dist., Div. Three. Oct. 17, 1962.]

Estate of LILLIAN GLOW, Deceased. LOUIS GLOW, Petitioner and Appellant, v. DOROTHY B. DUBOFF et al., Objectors and Respondents.

614

Levy, Russell, DeRoy & Glow and George DeRoy for Petitioner and Appellant.

Gilbert, Nissen & Irvin, Robert W. Gilbert and Weisman & Dreisen for Objectors and Respondents.

SHINN, P. J.—This is an appeal from a decree determining interests in an estate. The decedent, Mrs. Lillian Glow (née Broude), died on December 25, 1959. Her husband, Fred Glow, predeceased her on or about July 2, 1958. There was no issue of their marriage and Lillian Glow never remarried after the death of Fred Glow. As of the date of her death, neither Lillian nor Fred Glow had left any surviving spouse, issue, or parent. On March 22, 1960, Lillian's will, as obliterated (see below), was admitted to probate. On December 2, 1960, appellant Louis Glow, a brother of the decedent's predeceased husband, filed a petition to determine heirship alleging, in substance, that the will was nondispositive, that decedent's estate was either community property of Lillian and Fred or the separate property of Fred to which Lillian succeeded upon his death and should, therefore, pass by intestate succession, and that he should share therein by virtue of sections 228 and 229 of the Probate Code to the extent that either or both were applicable.

The holographic will, as altered by obliteration, was admitted to probate and reads:

"Wednesday
10 A M
I, Lillian Glow,
my last will, If
I pass on before
4 P M to-day July 2
(24 hours after my husband)
wish all my cash
and holdings to be
placed in 'Broude
Trust Fund—(*the balance
my husbands share to be
given to his family.*)
Lillian Glow
"PS                    7/4/58
At the reading of the will
he took care of his family
Everything goes to the
Broude Trust Fund
My brothers and sisters
as executors except
my sister Sophie—
(*no*) to (*be*) share but
not as a executor
Lillian Glow
"7/17/58
My group insurance
change in benef
36,500.00—blanks requested
& Met Life 2000.00
beneficiaries
Broude Trust Fund"

The italicized words were crossed out.

Petitioner and appellant took the position in the trial court that the presence of the words "Broude Trust Fund" necessarily disclosed an intent to set up a testamentary trust, which failed. It was stipulated that as of the date of Lillian's death there was no existing formal trust labeled as "the Broude Trust" or "Broude Trust Fund," and that in fact there never had been.

Respondents opposed this position contending (1) that the will upon its face disclosed an intention to leave the estate to

them outright; (2) that the use of the technical term "Trust Fund" by testatrix, who was a lay person, did not require the court to conclude that she was using the term in its strictly technical legal sense, so as to defeat her will and result in intestacy; and (3) that there being no such trust as the "Broude Trust Fund" or "Broude Trust," if such terms gave rise to an uncertainty it was to be resolved by resort to extrinsic evidence.

The court construed the will in accordance with the contentions of respondents and determined that Lillian Glow died testate ". . . and that by the terms of said Will the whole of the said Estate is devised and bequeathed to the twelve (12) brothers and sisters of Lillian Glow, deceased, outright, to be shared equally by them. . . ."

The first question on appeal is: whether the court properly applied the rules of construction in finding that decedent ". . . meant her brothers and sisters when she used the words 'Broude Trust Fund' in her Will."

The cardinal rule in the interpretation of wills is that when it is possible, in reason, to find in the will an effective disposition of property of the maker and avoid intestacy in whole or in part, such intention is controlling and must be given effect. (Prob. Code, §§ 101, 102; *Estate of Akeley,* 35 Cal.2d 26 [215 P.2d 921, 17 A.L.R.2d 647]; *Estate of Brunet,* 34 Cal.2d 105 [207 P.2d 567, 11 A.L.R.2d 1382]; 17 A.L.R.2d 648; *Estate of Del Val,* 159 Cal.App.2d 600 [323 P.2d 1011].)

Our conclusion is that the will on its face supports the construction that it discloses an intention to give nothing to the husband's heirs and everything to Lillian's brothers and sisters. Appellant does not contend there is any wording in the will indicating an intent to leave the estate to any one else. He is contending only that Lillian had an intention to create a trust and that her efforts failed.

Lillian had heard the words "trust" and "executors" used and evidently thought that if she left everything to the brothers and sisters the estate would be called a trust and the beneficiaries executors. While she wanted Sophie to have her share she did not wish her to have a part in the management. Since no one except the brothers and sisters would share in the estate, "Broude Trust Fund" could have meant to Lillian the group consisting of the brothers and sisters and no one else.

Over objection of appellant the court received evi-

dence that the testatrix had referred to her brothers and sisters as the "Broude Trust."

Albert Broude, a brother of Lillian's, testified to conversations with her, namely: "She merely said that she had taken care of her brothers and sisters in the Broude Trust Fund and they were all to share equally," and that he had heard Lillian refer to all her brothers and sisters as the "Broude Trust" on several occasions—five or six times, but never before Fred Glow's death, and that sometimes "brothers and sisters" were used instead of the terms "Broude Trust" or "Broude Trust Fund."

It is contended by appellant that it was error to receive the extrinsic evidence and to consider it in interpreting the will. There was no error.

The rule of interpretation which the court held applicable is stated in section 105 of the Probate Code.[1] Appellant contends that the extrinsic evidence was inadmissible since the declarations of decedent merely indicated her intentions. Such, however, was not the purpose or the effect of the evidence. There was an imperfect description of the beneficiaries. It is well settled that the declarations of a testator may be shown to make certain the identity of a beneficiary who is imperfectly or inexactly described or named in the will. (53 Cal.Jur.2d 711; *Estate of Nessel,* 164 Cal.App.2d 798 [331 P.2d 205]; *Taylor* v. *McCowen,* 154 Cal. 798 [99 P. 351]; *Estate of Nunes,* 123 Cal.App.2d 150 [266 P.2d 574]; *Estate of Donnellan,* 164 Cal. 14 [127 P. 166].)

The contention of appellant that the extrinsic evidence should have been excluded upon the ground that it merely disclosed the intentions of Mrs. Glow, is not valid. ▮ Evidence to resolve an ambiguity as to identity does not fall within the rule barring evidence of declarations within the meaning of section 105. (*Estate of Nessel, supra*; *Estate of Dominici,* 151 Cal. 181 [90 P. 448]; *Estate of Brisacher,* 27 Cal.App.2d 327 [80 P.2d 1033].)

The judgment is affirmed.

Ford, J., and Files, J., concurred.

[1] "When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations."