9 Cal.App.3d 194 (1970)
87 Cal. Rptr. 881
Estate of BETH A. WHITE, Deceased.
BERT W. ABELL et al., Petitioners and Appellants,
v.
BETTY J. KOON, Claimant and Respondent.
Docket No. 9868.
Court of Appeals of California, Fourth District, Division Two.
June 25, 1970.
*196 COUNSEL
Walker, Wright, Tyler & Ward and Edward M. Lynch for Petitioners and Appellants.
R.R. Campagna for Claimant and Respondent.
OPINION
KERRIGAN, J.
This is an appeal from a decree determining heirship wherein the trial court ruled that a house, two unimproved lots, and a savings account owned by the decedent, Beth A. White, at the time of her *197 demise passed to the respondent pursuant to the decedent's last will and testament.
Beth A. White died testate on October 2, 1963, leaving certain real and personal property located in San Bernardino County. Her aged mother was her only surviving heir, and the mother passed away shortly after Beth's demise.
The testatrix' holographic will, dated July 27, 1963, was admitted to probate. In her handwritten will, with one minor exception not here pertinent, Beth endeavored to effect a disposition of her property to three persons: the appellants, Bert and Lula Abell [her former brother-in-law and his wife], and the respondent, Betty J. Koon [the daughter of Hollis White, whom Beth had married in 1961 and who predeceased her in 1962].
The testatrix' last will and testament reads as follows, with italics added relative to the disputed items of real and personal property which are the subjects of this appeal:
"July 27, 1963
"I, Beth A. White, being of sound mind and not acting under fraud or duress, do give, devise and bequeath properties listed below to persons named:
"Seven lots in Smoke Tree District, Twentynine Palms, California, including house on Lot 112, Tract 1289, to Lula and Bert Abell, whose address is 4269 Verdugo View Drive, Los Angeles 65, California.
"Trust deeds and proceeds from loans, and interest, to Lula and Bert Abell. These loans have been placed for collection in Security-First National Bank, Twentynine Palms. There [sic] are the June Swanson Note, the Kinney-Wood Note and the Ralph and Nell Benn Note, which is secured by the Mo-Trail Trailer Park.
".... .... .... . .
"A cabin at Big Bear Lake, California, located on Lot 1, Block `E', Tract 2577, Meadow Park Tract, per map recorded in Book 36, Page 75, to Betty J Koon, 4596 Mayfield, San Bernardino, California.
"House at 56759 Joshua Drive, Yucca Valley, and contents unless otherwise designated.
"Lots being purchased under contract, described as Lot 41, Tract 5912, and Lot 66, Tract 5912, in Yucca Valley, California.
"Funds now in Savings Account No. 2376-21 Security-First National Bank, Yucca Valley, California.
*198 "Page 2
"Last Will and Testament of Beth A. White  continued
"All funds in Savings Account No. 5855-2, Security-First National Bank, Twentynine Palms, California, to go to Lula and Bert Abell.
"Remaining shares of Diversified Growth Mutual Fund to go to Lula and Bert Abell.
"Pacific Power & Light Stock, which is presently used as collateral on loan at Security-First National Bank, Twentynine Palms, California. This is to be sold with one-half the proceeds going to Betty J. Koon, and the other half to Lula and Bert Abell.
"I hereby appoint Roland T. Williams ... Executor of my estate, to serve without bond.
"Signed this 27th day of July, 1963.
/s/ "Beth A. White"
It should be noted that the testatrix made a specific disposition of each item of real and personal property to a named person or persons, save and excepting the house, two lots and Security-First National bank account, all being situated in Yucca Valley.
Following admission of the will to probate, the appellants filed a petition for a decree determining interest in the estate for the purpose of resolving the construction of the will and accomplishing proper distribution, claiming that the aforesaid house, two lots, and the funds in the savings account were theirs. The respondent countered by filing a statement of interest in the estate, wherein she claimed the said real and personal property as hers.[1]
A hearing on the petition was held before the court sitting without a jury. The appellants introduced Beth's will in evidence and rested.
The respondent called Mrs. Alice Neely, an old friend of Beth's who, over objection, testified to the following effect: In February or March 1963, she had a conversation with Beth; Beth told her she had made a will[2] leaving all but a house at Twentynine Palms to Betty Koon, respondent, because Betty and her family had treated her nicely when she married Betty's father, and she wanted to help Betty put her three boys through college, and because the Abells were, in effect, financially secure as Bert Abell was a fireman, *199 would receive a pension, and didn't need the bulk of the estate so she wanted Betty to have it.
The respondent testified to the following effect: She had known Beth for a year before her father's marriage to Beth in 1961; the Yucca Valley house was the fruit of a trade by Beth and her father, Hollis White, with third parties named Hamilton of a residence originally acquired by her father and June White, her mother, from a Mr. and Mrs. Wing; substantially all the furnishings in the Yucca Valley house had belonged to Hollis and June White; that Beth had told her that she had made arrangements with Mr. and Mrs. Abell to look after her mother, who was in a rest home in Kansas, and that she was leaving the Abells a portion of her estate to take care of the mother, and that the income would take care of her mother's expenses; that Beth had also told her that "`Well, you will always have the house out there in Yucca.' She said that there was enough money in the bank account to pay off the mortgage, if I wanted to keep the house and have it cleared."
In rebuttal, the appellant, Lula Abell, testified as follows: Beth had been her sister-in-law and was a friend of 20 years' duration; just before July 1963 [when Beth prepared and executed the holographic will] Beth had exacted a promise from her and her husband to look after Beth's mother if something happened to her; in turn, Beth stated that she would put funds at the Abells' disposal for such purpose; after Beth's death, she and her husband paid out $600 for the mother's care; the mother's subsequent death obviated this expenditure.
The appellants also introduced in evidence a letter written by the testatrix, dated August 1, 1963, which corroborated the Abells' promise respecting Beth's mother, and contained the following language: "You will receive the necessary funds from various collections named in my will which should leave you with some `left over.' One of these days I will get a check to you for an emergency fund, in case the estate wouldn't be immediately settled."
The trial court found that the respondent Betty J. Koon was entitled to the items of property not expressly devised in the will and ordered that the same be distributed to her.
(1a) The appellants maintain that the will itself reflects an intent on the part of the testatrix that the house, two lots, and bank account were devised to them. (2a) Appellants further contend that parol evidence of the testatrix' intentions was erroneously admitted in violation of section 105 of the Probate Code.
(3) The cardinal rule of construction in interpretation of wills is to ascertain the testator's intent. (Prob. Code, § 101; Estate of Salmonski, 38 *200 Cal.2d 199, 209 [238 P.2d 966].) This intent is first sought in the language of the will. In the will before us, the language used does not indicate the testatrix' intent. The legatee or legatees of the contested items have not been named.
(4) A will not drawn by an attorney should be liberally construed for the purpose of determining the testator's intent. (Estate of Karkeet, 56 Cal.2d 277, 282 [14 Cal. Rptr. 664, 363 P.2d 896].) (5) The making of a will raises a presumption that the testator intended to dispose of all his property. (Estate of Beldon, 11 Cal.2d 108, 111 [77 P.2d 1052].) (1b) Applying the foregoing rules to the holographic will involved herein, it appears manifest that Beth intended that the contested items pass upon her death either to Betty J. Koon or to Lula and Bert Abell, inasmuch as they are the devisees immediately preceding and succeeding the uncertain bequests. Consequently, the provisions of the will with respect to disposition of the disputed items are ambiguous.
(6) An ambiguity is said to exist in an instrument when the written language is fairly susceptible of two or more constructions. (Hulse v. Juillard Fancy Foods Co., 61 Cal.2d 571, 573 [39 Cal. Rptr. 529, 394 P.2d 65]; Pacific Gas & Elec. Co. v. G.W. Thomas Drayage etc. Co., 69 Cal.2d 33, 40 [69 Cal. Rptr. 561, 442 P.2d 641].) A patent ambiguity is an uncertainty which appears on the face of a will. (Estate of Russell, 69 Cal.2d 200, 207 [70 Cal. Rptr. 561, 444 P.2d 353]; see Comment: Extrinsic Evidence and the Construction of Wills in California, 50 Cal.L.Rev. 283, 284-289.) A latent ambiguity is one which is not apparent on the face of the will but is disclosed by some fact collateral to it. [Estate of Russell, supra, 69 Cal.2d 200, 207; see 4 Page on Wills [Bowe-Parker Rev.], § 32.7, p. 255.] (1c) The ambiguity in the instant will is a patent one.
In a series of recent decisions, the Supreme Court has laid to rest several antique concepts involving the interpretation of written instruments, the effect of which are not only to sanction the admission of extrinsic evidence to interpret a document, but also to emasculate Lord Bacon's ancient formula (Bacon: The Elements of the Common Law of England, [1639] 3-96) allowing extrinsic evidence only for the limited purpose of resolving a latent, but not a patent, ambiguity. (See Parsons v. Bristol Dev. Co., 62 Cal.2d 861 [44 Cal. Rptr. 767, 402 P.2d 839]; Pacific Gas & Elec. Co. v. G.W. Thomas Drayage etc. Co., supra, 69 Cal.2d 33; Estate of Russell, supra, 69 Cal.2d 200, 207.)
However, in the field of wills, Bacon's formula for admissibility of extrinsic evidence, although somewhat changed, lives on and is codified in section 105 of the Probate Code, which provides as follows: "When there is an imperfect description, or no person or property exactly answers the *201 description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations." (Italics added.) The only rationale for the rule appears to be that inasmuch as the testator is dead and cannot refute the hearsay there is a real danger of perjury. (See Comment: Extrinsic Evidence and the Construction of Wills in California, 50 Cal.L. Rev. 283, 293.)
While it has been suggested that the rationale for the rule has outlived its utility, and that the only criteria for the admission of any extrinsic evidence as an aid in interpretation of ambiguous documents should be its relevancy and weight (Comment: Extrinsic Evidence and the Construction of Wills in California, 50 Cal.L.Rev. 283, 298), the rule still exists. (See Estate of Russell, supra, 69 Cal.2d 200, 212.)
(7) In deference to the modern rules of interpretation of written instruments, including wills, section 105 of the Probate Code should be strictly construed insofar as it excludes the testator's oral declarations of intent in situations involving an ambiguous will. However, its prohibition applies with full force when the oral declarations of intent are sought to be admitted to create an ambiguity where the language used, taken in the light of surrounding circumstances, admits of only one construction. (Estate of Beldon, supra, 11 Cal.2d 108, 112.)
A scholarly analysis of the cases interpreting section 105 of the Probate Code has resulted in the justifiable conclusion that it is impossible to determine when the testator's oral declarations would be deemed admissible in any given case (Comment: Extrinsic Evidence and the Construction of Wills in California, 50 Cal.L.Rev. 283, 292-296) because the courts, in an understandable effort to circumvent the harshness of the rule have attempted to create multiple exceptions or, oftentimes, simply ignored its existence. (8) For those reasons, a testator's oral declarations are admissible to show his "state of mind" with respect to the meaning of particular language used (Estate of Fries, 221 Cal. App.2d 725, 730 [34 Cal. Rptr. 749]), to establish the testamentary or nontestamentary character of the instrument (Estate of Spitzer, 196 Cal. 301, 306 [237 P. 739]), to identify property included within the estate (Paley v. Superior Court, 137 Cal. App.2d 450, 456-457 [290 P.2d 617]), or to identify a beneficiary. (Estate of Glow, 208 Cal. App.2d 613, 617 [25 Cal. Rptr. 416].)
(2b) The evidence in question could be construed, as appellants contend, as oral declarations of intent. However, that was not the purpose *202 for which it was offered. Instead, the declarations were admitted to identify the legatee and thereby resolve the patent ambiguity. Evidence to resolve an ambiguity as to identity does not fall within the rule barring evidence of declarations within the meaning of section 105 of the Probate Code. (Estate of Glow, supra, 208 Cal. App.2d 613, 617.) The trial court acted with propriety in allowing the testatrix' oral declarations to be admitted in evidence.
The decree is affirmed.
Gardner, P.J., and Tamura, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied August 19, 1970.
NOTES
[1] None of the parties are heirs-at-law and neither side advocates an interpretation favoring partial intestacy.
[2] The earlier will was never produced nor offered in evidence.