67 Cal.App.3d 350 (1977)
136 Cal. Rptr. 628
Estate of MORRIS A. NEWMARK, Deceased.
UNION BANK, as Trustee, etc., Petitioner and Respondent,
v.
SECURITY PACIFIC NATIONAL BANK, as Trustee, etc., Objector and Appellant;
GEORGE ALFRED NEWMARK et al., Claimants and Respondents;
CHESTER E. HOWELL, as Executor, etc., Objector and Respondent.
Docket No. 47821.
Court of Appeals of California, Second District, Division Five.
February 18, 1977.
*353 COUNSEL
Adams, Duque & Hazeltine, Stephen M. Burgin, Margaret Levy and Homer B. Newman for Objector and Appellant.
Parker, Milliken, Kohlmeier, Clark & O'Hara, Paul J. Livadary and Carlo Sima for Claimants and Respondents.
No appearance for Petitioner and Respondent and for Objector and Respondent.
OPINION
STEPHENS, Acting P.J.
The origin of this litigation is that William Newmark, the last surviving son of the testator M.A. Newmark, died before his sister Edna Newmark. The central issue of the litigation is whether the language of the decree of distribution (Decree) requires the court to imply a condition of survival. The testator died in 1931, and his estate was divided in accordance with the Decree based on his will. The bulk of the estate passed through the residuary clause of the will. The Decree established two trusts with substantially similar dispositive provisions, and they are treated as one for the purposes of this opinion. All of the income from the trust was payable to the testator's daughter Edna. In directing the trust's termination, the Decree's wording parallels that of the testator: "Upon the death of said daughter, said trust shall terminate and all property of every kind and description remaining in the hands of said trustee shall be distributed to Robert Newmark, William Newmark, and Alfred Newmark, sons of decedent, share and share alike, or if any of them be dead, then to the survivor or survivors of them; provided, however, that if said daughter shall die leaving lawful issue, then said property shall go to, vest in and be distributed to said issue of said daughter in such proportions as she shall by will direct, and if she shall have no will, then in equal shares." (Italics added.) As to the residue of the estate, the Decree's exact order is: "To Robert Newmark, *354 William Newmark and Alfred Newmark, sons of said decedent, each an undivided one-third of all the rest and residue and remainder of said estate remaining after the distribution of an undivided one-fourth interest of said rest, residue and remainder, to Union Bank and Trust Company of Los Angeles, as trustee, as hereinabove provided, ..."
Feeling that the will did not express the true intent of their father, the three sons entered into an agreement whereby whichever of them received any of the trust assets would effect a further distribution to the elder Newmark's living lineal descendants on a per stirpes basis. The first of the testator's children to die was Alfred. His estate was distributed to a trust administered by the appellant, Security Pacific National Bank. In 1952, Robert died creating a trust for his sons. Finally, William died in 1955, without issue and leaving much of his estate to his nephews, the sons of Alfred and Robert.
In 1974, Edna Newmark died without surviving issue. Since under the Decree the trust was to terminate upon Edna's death, the trustee, the respondent Union Bank, petitioned the trial court for instructions regarding the distribution of the trust's assets. The petition suggested that there was no survival requirement relating to Edna's death, and therefore the corpus of the trust should go to the estate of the brother who outlived the other two, namely William, and finally that the agreement entered into by the brothers should be given effect so that the assets should be distributed among the sons of the three brothers by right of representation. The petition was opposed by the trustee under Alfred's will and the executor of Edna's estate. In an attempt to maximize the assets of its trust, Security Pacific National Bank argued that there was a condition of survivorship to the time of possession attached to the benefaction provided the sons upon Edna's death without lawful issue. The court below issued a final decree of distribution (Final Decree) incorporating the interpretation advanced by the trustee, Union Bank, which in light of the agreement which the court also adjudicated as binding, resulted in an order that 50 percent of the assets go to the son of Alfred and that the remaining half be equally divided between the sons of Robert Newmark. Although Union Bank was the prevailing party below, the Final Decree is defended by the sons of Robert and Alfred Newmark. The appellant is joined by the executor of Edna Newmark's estate.
(1) In disputing the Final Decree the appellant claims error in two respects. Failure to find a condition of survival in the giftover to the sons *355 is the first exception taken, and it is coupled with a challenge to the finding that the agreement entered into by the three sons is binding. The second issue may be summarily treated since no decision on the merits could have been rendered in this case. None of the parties who would be bound by the agreement, namely the executors of the sons' estates, were represented in the action below, and given this posture it was improvident to make a ruling on the validity of the agreement. The only issue treated in this appeal, then, is the validity of the trial court's conclusion that the Decree does not require any of the sons to survive Edna in order for a son's estate to take the giftover of the trust's corpus.
The parties have admirably isolated the issue  whether the words of the Decree require survivorship of the life beneficiary  rather than digressing into the characterization of the interests involved as vested or contingent. (See Halbach, Future Interests: Express and Implied Conditions of Survival (1961) 49 Cal.L.Rev. 297, 438-439.) The parties agree that the provisions of a decree of distribution, like those of a will, are to be construed in such a manner as to determine the intent of the testator. (Prob. Code, § 101; Estate of Ferry, 55 Cal.2d 776, 783 [13 Cal. Rptr. 180, 361 P.2d 900, 90 A.L.R.2d 300].) Further, they seem to agree that an ambiguity exists in the Decree since William Newmark, the last surviving son of the testator, died prior to his sister Edna upon whose death the trust in question was to terminate. (2) An ambiguity exists in a written instrument when its language is properly susceptible to multiple constructions. (Estate of White, 9 Cal. App.3d 194, 200 [87 Cal. Rptr. 881].) With each of them assuming the ambiguity to exist, the parties proceed to apply the various rules of construction. The appellant cites section 122 of the Probate Code[1] and other generally accepted rules of construction to establish its position that a condition of survival must be implied. Respondent answers with equally relevant rules and case law. (3) In light of the conflicting authorities cited, it is wise to recall the admonishment that "no two wills are exactly alike and but few are sufficiently similar in the wording of dispository provisions so that a decision interpreting one would be of any great help in interpreting another." (Estate of Keller, 134 Cal. App.2d 232, 238 [286 P.2d 889].)
(4) The initial question before the court is whether an interpretation of the written instrument will yield a clear intent on the part of the *356 testator, or must the court resort to certain legal presumptions known as rules of construction. (Prob. Code, § 100; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 159, p. 5675.) Whether stated in terms of the distinct processes of interpretation and construction or simply that all of the other rules of construction are subordinate to the cardinal rule that the testator's intent is to be carried out, the method to be used is the same. (See 4 Page on Wills [Bowe-Parker Rev.] § 30.3, p. 10; and Estate of Salmonski, 38 Cal.2d 199, 209 [238 P.2d 966].) The method is to determine what the testator intended to accomplish by giving an ordinary interpretation to the language used. (Estate of Keller, supra, 134 Cal. App.2d 232, 236.) Whether this approach is called the process of interpretation or the cardinal rule of construction is irrelevant to the present inquiry.
The basic rule is to carry out the intent of the testator. (Prob. Code, § 101; Estate of Russell, 69 Cal.2d 200, 205 [70 Cal. Rptr. 561, 444 P.2d 353]; Estate of White, supra, 9 Cal. App.3d 194, 200.) If the intent can be ascertained from the words actually used, the inquiry is ended. (Estate of Helfman, 193 Cal. App.2d 652, 655 [14 Cal. Rptr. 482].) Naturally, the intent sought is the one expressed in the instrument and not some undisclosed desire of the testator. (Estate of Deacon, 172 Cal. App.2d 319, 323 [342 P.2d 261].) If this process does not yield the intent of the testator, then the legal presumptions of the construction process must be indulged. Aware (1) that the rules of construction are legal presumptions of intent, (2) that  as the parties' briefs illustrate  the rules are frequently in conflict, and (3) that these rules may be used to rewrite the testator's will (Estate of Keller, supra, 134 Cal. App.2d 232, 236), it is incumbent upon this court to first examine the Decree within its four corners. (Parsons v. Bristol Development Co., 62 Cal.2d 861 [44 Cal. Rptr. 767, 402 P.2d 839].)
(5) An interpretation of any written instrument requires that every word be examined and given some effect, if possible. Generally, in determining the testator's intent, all of his words should be considered in the light of common sense and given effect. (Estate of Keller, supra, 134 Cal. App.2d 232, 236; Estate of Puett, 1 Cal.2d 131 [33 P.2d 825].) This fundamental principle has, also, been expressed as the rule of construction requiring that every word should be given some effect. (Prob. Code, § 102.) Corollary to this maxim, is the assumption that words are usually included for the purpose of being operative.[2] With this in mind, we may *357 examine the effect of including the survivorship provision by considering the decree with that provision omitted. If the phrase  "or if any of them be dead, then to the survivor or survivors of them"  is deleted, both parties must agree that the remainder of the property upon Edna's death without lawful issue would go to the separate estates of the three sons. Irrespective of whether we adopt the appellant's or the respondent's view of the phraseology, these 15 words are used to change an otherwise agreed upon result.
(6a) The testator's use of the words  or if any of them be dead  expresses his consideration of the contingency that at the time of the trust's termination not all of his sons might be alive. But the central issue  one which the parties have largely ignored  is whether these same words express an awareness on his part that all of his sons might predecease his daughter. The significance of these words is highlighted by the fact that (1) they qualify the remaining words of the phrase, (2) they do not appear in any of the cases cited (e.g., In re Winter, 114 Cal. 186 [45 P. 1063]; In re Nicholas' Will, 50 Misc.2d 76 [269 N.Y.S.2d 623]; Ellis v. Paxton (W.D.Ky. 1953) 114 F. Supp. 347, affd., 218 F.2d 955 (6th Cir.1955)), and (3) if the appellant's position is adopted, these words become without operative effect. The remainder of the phrase  then to the survivor or survivors of them  might support the appellant's position if it was not preceded by these words. Minus these initial words, the Decree is unclear as to whether the testator had considered the possible death of all of his sons prior to Edna's death. Ignoring the effect of these words, both parties have failed to examine their significance in the context of the testator's disposition. Indeed, the appellant's only reference to these critical words supports the court's position.
An understanding of these words  if any of them be dead  turns on the testator's use of the word "any." When interpreting words in a written instrument, they should be given their ordinary usage, if possible. (Estate of Keller, supra, 134 Cal. App.2d 232, 236.) This policy has been incorporated into the Probate Code as a rule of construction. (Prob. Code, § 106 requires that the ordinary use of the words be considered.) The word "any" includes among its definitions  one, some, or all indiscriminately of whatever quantity.[3] (Webster's New Internat. *358 Dict. (3d ed.) p. 97.) If the testator intended to include one, some or all of his sons in the group of those dead at the time of Edna's death, he has expressly considered the present situation, and consequently, the Decree should provide a resolution of the present controversy within its four corners. If the testator had meant only one or some but not all of his sons, then the words would be unnecessary since his use of  survivor or survivors of them  would cover such a meaning. The appellant's brief acknowledges that if the testator had intended the trial court's interpretation he would have stated "if any or all of them be dead" (italics in the original), but the testator has said just that, only without being repetitive. Simply put, the phrase "any of them" may in ordinary usage include the concept of "all of them."
What are the consequences of this finding upon the subsequent wording  then to the survivor or survivors of them? The use of the word "them" indicates that if the previous condition exists  one, some, or all of the sons are dead at the time of the trust's termination  the remaining property is to go to the survivor or survivors of them. The word "them" refers to the three sons of the testator previously named in the Decree. If the first part of the phrase had been omitted, the present case would closely resemble those cited by the parties (see In re Winter, supra, 114 Cal. 186; Estate of Ferry, supra, 55 Cal.2d 776; and Ellis v. Paxton, supra, 114 F.Supp 347), where the issue was whether the death of the testator or the life beneficiary was the measure of survivorship. We agree with the appellant that the Decree is speaking at the time of Edna's death, but that does not require a finding for the appellant under section 122 of the Probate Code. Whether our analysis is perceived as the distinct process of interpretation or simply the determination of the testator's actual intent as expressed by an ordinary interpretation of the language used, the legal presumption of Probate Code section 122 is not required, nor relevant.
At the time of Edna's death without lawful issue, the Decree directs that all of the property be given to the survivor or survivors of the sons. *359 In light of the testator's expressed awareness of the possibility that his sons might not survive his daughter, the common definition of survivor will yield a result consonant with such a recognition. The definition of survivor ordinarily includes "one that outlives another." (Webster's New Internat. Dict. supra, p. 2303.) The term "another" as used here refers to the other sons of the testator. Under this definition  one that is compatible with the testator's expressed recognition that all of his sons might predecease his daughter  William Newmark became the "survivor of them" upon the death of his brother Robert in 1952. As we interpret the Decree, we find that it requires that the remainder of all property from the estate of M.A. Newmark go to the estate of William Newmark upon the death of Edna Newmark without lawful issue.
The numerous rules of construction cited by counsel are inapplicable to the present case since a careful reading of the Decree's language reveals the testator's intent to cover the present fact situation. Upon close examination there is no ambiguity, either patent or latent. (See Estate of Russell, supra, 69 Cal.2d 200, 207.) Hence, there is no need to apply the rules of construction. The appellant relies heavily on Probate Code section 122 as requiring the court to imply a condition of survival, but that statute like all rules of construction is a legal presumption only to be applied when the words of the instrument do not clearly express the testator's intent. (Prob. Code, § 100.) Any rule of construction is overborne by the testator's expression of a contrary intent. (Estate of Dolsen, 90 Cal. App.2d 575, 577 [203 P.2d 775]; In re Winter, supra, 114 Cal. 186.) Our finding that the testator's intent may be understood by means of an ordinary interpretation renders the preferences expressed in the various rules of construction inapposite. Our analysis, whether deemed an interpretation prior to construction or a construction based on the cardinal rule of effecting the testator's expressed intent, does not require a consideration of such rules of construction as Probate Code section 122.
(7) "`All other rules of construction are subordinate to this cardinal rule [a will is to be construed according to the intention of the testator] and in its application presumptions are to be indulged which will prevent entire or partial intestacy. [Citation.]'" (Estate of Karkeet, 56 Cal.2d 277, 281 [14 Cal. Rptr. 664, 363 P.2d 896].) (6b) Our finding that the Decree's language embraces the possible demise of the testator's sons prior to the termination of the trust is consistent with an intent to avoid *360 intestacy. It must be remembered, that the residuary clause gave one-fourth of the residue to the Union Bank, as trustee, with the rest going to the sons in fee equally, and if the corpus is again passed through that provision, one-fourth will again go to the trustee of the terminated trust. Following the majority rule, this state holds that where a legatee cannot take a residuary gift, that gift passes through intestate succession. (See Estate of Broad, 20 Cal.2d 612 [128 P.2d 1]; Estate of Anderson, 166 Cal. App.2d 39 [332 P.2d 785]; Estate of Conklin, 139 Cal. App.2d 532 [293 P.2d 794]; and especially 36 A.L.R.2d at p. 1118.) Our finding avoids any intestacy.
Since the trial court's interpretation of the written instrument was without the benefit of extrinsic evidence, this court has applied the applicable standard of review set forth in Parsons v. Bristol Development Co., supra, at page 866. The instrument has been interpreted as a matter of law, but we may not overrule the trial court's interpretation unless it is erroneous, i.e., not as tenable as our interpretation. In the present matter, our interpretation results in the same finding as the trial court's  as a matter of law no condition of survivorship is implied.
The judgment is vacated and the superior court is ordered to enter a decree distributing the trust assets to the estate of William Newmark.
Ashby, J., and Hastings, J., concurred.
NOTES
[1] Section 122 of the Probate Code states: "Words in a will referring to death or survivorship, simply, relate to the time of the testator's death, unless possession is actually postponed, when they must be referred to the time of possession."
[2] Section 102 of the Probate Code states: "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy."
[3] A similar definition was adopted in Wenthe v. Hospital Service, Inc., of Iowa, 251 Iowa 765 [100 N.W.2d 903, 905]. There a health insurance contract excluded coverage if an employer was required to provide any hospital service for the injury or disease. The court held that this provision excluded such injuries irrespective of the amount of the benefit provided by the employer. The term "any" was found to include all or less than all of the hospital services needed.

The court in Chamblee v. Guy, 218 Ga. 56 [126 S.E.2d 205, 206], recognized that the word "any" may mean "all" or "one out of several," but held that the testator intended to allow his wife to have both automobiles rather than only one of the two he owned at his death. The court considered the words "any automobile" to include the concept of "all of the automobiles."