[Civ. No. 23140.   First Dist., Div. Two.   July 7, 1966.]

Estate of VIOLA VOORMAN WILLETT, Deceased. LOR-OLA TRYON WIDMER et al., Plaintiffs and Appellants, v. WILLIAM HOWARD GODWIN, JR., Defendant and Respondent.

Lillick, Geary, Wheat, Adams & Charles, Robert R. Vayssie for Plaintiffs and Appellants.

Albert F. Skelly and Bruce W. Stilson for Defendant and Respondent.

AGEE, J.—Viola Voorman Willett died on June 19, 1964, leaving a will executed on January 13, 1956, which provided that upon her death the residue of her estate was to be placed in trust and divided into three equal parts. Each part was to be designated by the name of one of her three children, daughters Ola, Barbara, and Audrey, each of whom was to receive the income from the part bearing her name for so long as she should live.

The termination of the trust as to each of such parts and the disposition thereof were provided for as follows:

"5. Upon the death of each of my said daughters the trust shall terminate as to the part bearing her name and such part shall vest in the following:

"(1) The then surviving issue of such deceased daughter, said issue to take per stirpes; but if she shall leave no such issue, then

"(2) The then surviving issue of my other daughters, the said issue of each other daughter to take one equal share thereof per stirpes."

Barbara was alive at the time of the execution of the will but predeceased the testatrix without leaving issue.[1] The disposition of the "Barbara part" is therefore controlled by paragraph 5(2), rather than by paragraph 5(1).

The court below, without the aid of any extrinsic evidence, except such undisputed background facts as are stated herein, decreed that the Barbara part should be distributed per stirpes to Ola's three children and Audrey's one child, thus giving one-sixth thereof to each of Ola's children and the other one-half thereof to Audrey's child.

Ola's children have appealed, contending that the division

---

[1]The family situation at the time of the testatrix's death may be diagramed as follows:

should be on a per capita basis, thus giving each of them one-fourth of the Barbara part.[2]

The parties agree that we must, if possible, ascertain the intention of the testatrix as expressed by the language of the will itself and, in doing so, we are not bound by the conclusion of the lower court.

It is not disputed that the opening phrase of paragraph 5(2), namely, "The then surviving issue of my other daughters," merely designates the general class of persons who may be eligible to take the part of a daughter dying without issue.

The dispute here concerns the proper interpretation of the remaining words in paragraph 5(2), namely, "the said issue of each other daughter to take one equal share thereof [i.e., of the Barbara part] per stirpes."

Appellants contend that "per stirpes," as used in the above phrase, does not apply to grandchildren of the testatrix but applies only to her great-grandchildren and their issue.

They reason that if the "per stirpes" restriction had not been added, great-grandchildren as well as grandchildren would take an equal share in the Barbara part, since "issue" includes all lineal descendants. (*Estate of Heard,* 49 Cal.2d 514, 518-519 [319 P.2d 637].)

However, appellants assert, the testatrix did not intend that any of her great-grandchildren should take anything under paragraph 5(2) except by right of representation, and the addition of "per stirpes" to the phrase under consideration manifested such intention.

On the other hand, respondent contends that the phrase, "the said issue of each other daughter," was intended to divide such issue into two sets or classes (the issue descending from Ola and the issue descending from Audrey) and that the words, "to take one equal share thereof per stirpes," gives each set an equal portion or one-half of the Barbara part, and that after this division is made between the two sets, distribution is then to be made among the members of each set "per stirpes."

In support of this contention, respondent points out that when the testatrix designated the general class of those who

---

[2]While appellant Lorola and respondent William each have two children who, as lineal descendants of Ola and Audrey, are "surviving issue of my other daughters" (see *Estate of Heard,* 49 Cal.2d 514, 518-519 [319 P.2d 637]), no contention is made that they have any interest in the Barbara part, since their respective parents, Lorola and William, are living.

might take, she referred to her daughters jointly, i.e., "issue of my other daughters," but that, in designating the manner of distribution, she referred to her daughters in the singular, i.e., "issue of *each* other daughter." (Italics ours.)

Respondent argues that a distinction must be made between "issue of my . . . daughters," as used in the opening phrase, and "issue of each . . . daughter," as used in the phrase immediately following; that if the testatrix had intended to refer again generally to the "issue of my other daughters," she would have repeated these words or, simply, "the same issue," not (as she did) "the said issue of each other daughter."

It is true that respondent's interpretation results in an unequal distribution of the Barbara part among the four grandchildren. However, this is in complete harmony with the other provisions of the will and the general testamentary scheme of the testatrix.

It is apparent from the will as a whole that the testatrix intended to equalize distribution of her estate under the trust at the level of her daughters and not at the level of her grandchildren.

Under paragraph 5(1) of the will the testatrix first contemplated a situation where a daughter died leaving issue. Those issue would take their mother's share per stirpes and the fractional interest of each would depend upon how many of such issue there were.

In the event of Ola's death, each of her three children would receive one-third of her part, or in effect one-ninth of the estate. However, as to Audrey, her only child would receive in effect an entire one-third of the estate.

Thus, the deaths of Ola and Audrey would result in an unequal distribution of two-thirds of the trust estate among the four grandchildren. Yet this is clearly the intention of the testatrix as evidenced by the express provision for stirpital distribution.

The very concept of stirpital distribution is that it often results in unequal shares going to the individuals who take thereunder even though they are of equal degree of kinship to the testator.

It is logical to assume that, if Barbara had been already deceased when the testatrix executed her will, the clause leaving the residue of her estate in trust would have been worded, "to divide the same into *two* equal parts," instead of "to divide the same into three equal parts."

We have concluded that the more reasonable interpretation of paragraph 5(2) is that contended for by respondent. Both sides have called our attention to certain decisions which are claimed to involve the interpretation of language similar to that now before us. They have not been of help for the reason that each is readily distinguishable on the facts.

As stated in *Estate of Henderson*, 161 Cal. 353, 357 [119 P. 496] : "Of this class of questions it may be said, with more truth, perhaps, than of any other, that each case depends upon its own peculiar facts, and that precedents have comparatively small value."

In *Estate of Keller*, 134 Cal.App.2d 232, 238-239 [286 P.2d 889], the court stated: ". . . no two wills are exactly alike and but few are sufficiently similar in the wording of dispository provisions so that a decision interpreting one would be of any great help in interpreting another. Evidence of this is the dearth of appellate decisions construing identical or closely worded provisions under comparable circumstances."

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.