[Civ. Nos. 61551, 63464. Second Dist., Div. Three. July 16, 1982.]

Estate of ISIDOR SILVER, Deceased.
HELEN SILVER, Petitioner and Respondent, v.
ZECHARIA CASPI et al., Claimants and Appellants.

COUNSEL

Gustave L. Goldstein, Neiman & Billett and Patricia M. Wolfe for Claimants and Appellants.

Theodore E. Calleton and Garvey, Schubert, Adams & Barer for Petitioner and Respondent.

OPINION

**KLEIN, P. J.**—This is an appeal from an order construing the trust established by the will of Isidor Silver (Decedent) holding that on the death of his surviving spouse (Helen) the trust's assets were to pass to Helen's estate by intestacy and not by Decedent's will.

Against a number of contentions including claims that Helen signed a waiver and thereby made a binding election, and that the will should be given effect in accordance with the Decedent's intent, for reasons hereinafter discussed we affirm the judgment.

PROCEDURAL AND FACTUAL BACKGROUND[1]

---

[1]This case involves a consolidation of two separate appeals—The Marc Silver trust and Zecharia Caspi, et al.

Decedent and Helen were married in 1924 and lived together until he died in 1945. There were no issue of the marriage. Decedent was not survived by his parents but was survived by a brother, Marc. Three sisters named in Decedent's will and their issue all predeceased Decedent.

Decedent's will and codicil made a number of small bequests and placed the residue of the estate in a trust providing for an annuity of $300 per month for Helen with any excess income being distributed to Helen, Marc and Decedent's three sisters equally. Since the three sisters predeceased the testator leaving no issue, the excess income was actually distributed, equally to Helen and Marc until his death without issue in 1959. Since that date, Helen has received all of the trust income.

The decree of distribution in Decedent's probate proceedings provided as follows with respect to the distribution of principal from the testamentary trust upon its termination: "Upon the death of Helen Silver, wife of the Decedent, the trust estate shall be distributed to Marc Silver. The distribution of the trust estate, as aforesaid, shall be made in four equal, annual consecutive installments, commencing one year after the death of said Helen Silver. [¶] Should any of the above beneficiaries mentioned demise before receiving his or her share of principal or income, or any part of his or her share of principal or income provided, without leaving issue of his body him or her surviving, or issue of deceased issue, then that portion remaining to be distributed to him or her shall lapse and shall become a part of the remainder of the Trust estate."

At the time of his death, Decedent and Helen owned community property having a gross value of nearly $878,000 of which approximately $283,000 stood in Decedent's name alone with the remaining $595,000 being held in joint tenancy. While the will did not expressly dispose of the entire community property, attached to it was *a widow's election* signed and acknowledged contemporaneously by Helen, providing as follows: "I, HELEN SILVER, wife of ISIDOR SILVER, do hereby certify that I have read the foregoing Will of my husband and fully understand said Will and that my husband disposes not only of his separate property, but also of our community property, now owned or hereafter to be acquired, if any, including my half thereof, and being fully satisfied with its provisions, I hereby elect to accept and acquiesce on [*sic*] the provisions of said Will, waiving all claims to my share of

any community property and any and all other claims that I may have upon any of the property disposed of by said Will, including all of his property exempt from execution, and my right to a probate homestead but not including my right to a family allowance out of his estate during the probate administration thereof. This election and waiver is not a grant or release of my right, title or interest, or estate in any of our community property now owned or thereafter to be acquired and shall be effective and valid for any purpose only after the decease of my husband, and upon the conditions precedent, that said Will shall be duly admitted to probate by a Court of competent jurisdiction and that it shall not be successfully contested or probate thereof revoked."

After the will was admitted to probate, Marc filed a civil action seeking a declaratory judgment that the joint tenancy property was actually community property includable in the testamentary trust. The action was settled whereby Marc acquired title to the property in exchange for his payment of $95,000 cash to Helen and his agreement to assume the encumbrances thereon and to pay all taxes attributable thereto. The remaining portion of Decedent's and Helen's community property was administered as part of Decedent's estate and distributed to the trust established by the will.

*Because all of the named beneficiaries of the trust predeceased Helen and inasmuch as neither the decree of distribution nor the will provided for such an occurrence,* Helen petitioned the probate court for an order determining the ultimate distribution of the trust. After hearing, the court ruled that upon her death, the trust would terminate and all remaining assets would pass by intestate succession to Helen's estate.

Zecharia Caspi and related claimants (hereinafter Caspi), all of whom are descendents of Decedent's father's brothers and sisters, filed notice of appeal on October 20, 1980, "from the August 20, 1980 Minute Order." This minute order, being in effect nothing more than an announcement of a tentative decision, is nonappealable. (*Estate of Pieper* (1964) 224 Cal.App.2d 670, 675 [37 Cal.Rptr. 46]; Cal. Rules of Court, rule 232.) The Marc Silver Trust filed an amended notice of appeal on December 2, 1980, purporting to appeal from the "Minute Order re Findings of Fact, Conclusions of Law, and Order Construing Trust" entered November 20, 1980. This too is not an appealable order but merely a notice to the parties that "the Court has signed the . . .

Order Construing Trust" on November 20, 1980. The order construing trust was signed by the court and filed November 20, 1980, and entered December 22, 1980. We construe each appeal as being from this order and as having been filed immediately after its entry on December 22, 1980. (Cal. Rules of Court, rule 2(c).)

A third appeal by claimant Joseph Shemanski filed December 5, 1980, became in default and was dismissed by this court May 22, 1981, pursuant to California Rules of Court, rule 10(c).

### CASPI CONTENTION AND DISPOSITION

The Caspi claimants contend that by execution of the widow's election, Helen effectively transformed the community property into Decedent's separate property which, by reason of his intestacy as to the trust estate remainder, should be distributed to his heirs-at-law determined as of the date of his death.

Assuming arguendo that all of the premises of the contention are true, Caspi have not explained how they are in fact entitled to any portion of the estate. Their own exhibit B, a chart attached to their appellants' opening brief entitled "Succession to Separate Property," reflects that only under Probate Code section 226[2] would it be possible for one of such a degree of consanguinity as each of them is to participate in distribution of Decedent's estate. Since Decedent died leaving both a spouse and a brother, Probate Code section 226 has no application even if the spouse had waived her interest.

We conclude, therefore, that the Caspi claimants have no interest in Decedent's estate under any circumstances.

### THE MARC SILVER TRUST CONTENTIONS

The Marc Silver Trust avers that distribution should be made to it either under the will or by the laws of intestate succession in accordance with the testator's intent.

---

[2]Probate Code section 226 provides: "If the decedent leaves neither issue, spouse, parent, brother, sister, nor descendant of a deceased brother or sister, the estate goes to the next of kin in equal degree, excepting that, when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote."

It urges that under Probate Code section 102,[3] intestacy is not favored and an interpretation of the will which avoids intestacy is preferred.

The Marc Silver Trust also propounds that the policy in favor of early vesting supports its claim to the corpus of the trust and that Helen's election constituted a waiver to any rights in the trust corpus. It further contends that the widow's election transformed the community property corpus of the trust into Decedent's separate property.

## Discussion

1. *Decedent's Intent Is Carried Out Pursuant to the Lapse Provision of the Trust.*

■ The Marc Silver Trust argues that the will should be construed in accordance with the intent of the testator which is evidenced in clause 7, paragraph 10 of the will. This paragraph, modified to take into account the predecease of Decedent's three sisters, provides as follows: "Upon the death of my wife, I hereby direct that the trust estate be distributed ... to my brother, Mark [*sic*] Silver ...." We believe the provision is unambiguous and clearly expresses Decedent's intent as to what should occur on the death of Helen *if Marc were alive.*

But paragraph 11 of clause seven is also unambiguous and clearly. denotes Decedent's intention that Marc's share will lapse and become a part of the remainder of the trust estate if he does not survive distribution to him. This paragraph provides: "Should any of the above beneficiaries mentioned demise before receiving his or her share of principal or income, or any part of his or her share of principal or income provided, without leaving issue of his body him or her surviving, or issue of deceased issue, then that portion remaining to be distributed to him or her shall lapse and shall become a part of the remainder of the Trust estate and be distributed to the remaining beneficiaries, as herein provided."

Both paragraphs 10 and 11 were given effect in the provisions of the decree of distribution quoted, *supra*, and support the trial court's find-

[3]Probate Code section 102 provides: "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy."

ing of fact No. 8 to the effect that Marc's failure to survive Helen results in the trust estate remainder passing by intestacy.

*Estate of Newmark* (1977) 67 Cal.App.3d 350 [136 Cal.Rptr. 628] and *Smith* v. *Wood* (1933) 217 Cal. 541 [20 P.2d 48], relied upon by the Marc Silver Trust are both factually distinguishable in the wording of the wills involved and are not otherwise persuasive of a different conclusion.

### 2. *No Ambiguity Exists as to Invoke Probate Code Section 102.*

The Marc Silver Trust argues that under Probate Code section 102 intestacy is not favored, and that interpretation of the will which avoids intestacy is preferred, citing *Estate of Grove* (1977) 70 Cal.App.3d 355 [138 Cal.Rptr. 684], *Estate of Newmark, supra,* 67 Cal.App.3d 350, *Estate of Roberts* (1970) 9 Cal.App.3d 747 [88 Cal.Rptr. 396], and others.

We have reviewed these cases and in each there exists some ambiguity or uncertainty as to the testator's intent which permits an interpretation obviating any intestacy. In this case, we have concluded after examination of the will and decree of distribution that no ambiguity or uncertainty exists which would justify some strained interpretation to prevent intestacy. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318 [98 Cal. Rptr. 801, 491 P.2d 385].)

### 3. *The Policy in Favor of Early Vesting Is Inapplicable, and Helen's Election Did Not Constitute a Waiver.*

The Marc Silver Trust also argues that the policy in favor of early vesting supports its claim to the corpus of the estate. It relies upon Probate Code section 28 providing that "[t]estamentary dispositions . . . are presumed to vest at the testator's death" together with certain cited cases.

The Marc Silver Trust's reliance is misplaced. It fails to take into account the specific provision in the will that Marc survive distribution of his share. Even if Marc's share became vested at the death of Decedent, it became divested upon Marc's failure to survive Helen.

Alternatively, the Marc Silver Trust contends that even if the trust corpus passes by intestate succession, nonetheless it should go to

Marc's trust since Helen's claim to any share is precluded by her waiver of all such rights. The trial court determined otherwise and we concur.

With respect to such waiver, the trial court's interpretation of the document signed by Helen, made without assistance of extrinsic evidence, is reflected in its conclusion of law No. 4 as follows: "4. The election executed by Helen was a contract the sole purpose of which was to support the will. The election made no provision for and has no application to possible intestacy. The election does not affect Helen's right to take an intestate share of Decedent's property or her reversionary interest in her own property."

Our function in reviewing the interpretation of a written instrument by a trial court is explained in *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839] where the court said at page 866: "It is true that cases have said that even in the absence of extrinsic evidence the trial court's interpretation of a written instrument must be accepted 'if such interpretation is reasonable, or if [it] is one of two or more reasonable constructions of the instrument' (*Prickett v. Royal Ins. Co.*, 56 Cal.2d 234, 237 [14 Cal.Rptr. 675, 363 P.2d 907, 86 A.L.R.2d 711]; *Lundin v. Hallmark Productions, Inc.*, 161 Cal.App.2d 698, 701 [327 P.2d 166]), or if it is 'equally tenable' with the appellate court's interpretation (*Estate of Northcutt*, 16 Cal.2d 683, 690 [107 P.2d 607]; accord, *Estate of Cuneo*, 60 Cal.2d 196, 201 [32 Cal.Rptr. 409, 384 P.2d 1]). Such statements are not in conflict with *Estate of Platt, supra*, 21 Cal.2d 343 [131 P.2d 825], if they are interpreted, as they should be, to mean only that an appellate court must determine that the trial court's interpretation is erroneous before it may properly reverse a judgment. (See *Estate of Shannon*, 231 Cal.App.2d 886, 893 [42 Cal.Rptr. 278].) They do not mean that the appellate court is absolved of its duty to interpret the instrument."

Since there is no extrinsic evidence involved in the present case, we must make an independent determination of the meaning of the widow's election. It is readily apparent the basic purpose of the election was to provide a life income to Helen and to permit Decedent to dispose of the entire community estate of the parties in the manner particularized in the will. With this purpose, Helen agreed.

Stated another way, Helen gave up her rights to her share of the community property as well as to any claims she might have to any of the property disposed of by said will in consideration of two conditions—(1) that she be paid a fixed income for life and (2) that upon her

death the trust estate be distributed to Decedent's sisters and brother equally. The predecease of the sisters and brother prevented the second condition from happening.

We conclude therefore that one purpose of the widow's election having failed, i.e., transfer of trust assets to the survivors of the brother and sisters on termination, Helen is entitled to her reversionary interest in her share of the community property contributed to the trust as well as to take by intestacy Decedent's share of the community property contributed to the trust.

4. *No Authority Exists for the Transformation Contention.*

Finally, the Marc Silver Trust contends that the community property corpus of the trust was effectively transformed into Decedent's separate property by the widow's election and her acceptance of benefits for over 35 years.

No authority in support of the contention has been offered and our independent research has not revealed any. While it is true that married couples may freely contract to alter the separate or community status of their property, (Civ. Code, § 5103; *In re Marriage of Dawley* (1976) 17 Cal.3d 342, 350 [131 Cal.Rptr. 3, 551 P.2d 323]), the contract here in question contains no wording evidencing any intent of the parties to alter the community character of their property. The underlying purpose of the contract was to permit the terms of the will to be carried out and no alteration of the status of the couple's property was necessary for this purpose.

Accordingly we conclude, as did the trial court, that all of the assets of the trust consist of community property of Helen and Decedent, that Helen's share thereof will revert to her estate upon her death while Decedent's share will pass to Helen's estate pursuant to Probate Code section 201.

The judgment (order construing trust) is affirmed.

Lui, J., and Danielson, J., concurred.

On August 13, 1982, the opinion was modified to read as printed above.